## Robert H. Sarvis v. Vermont State Colleges

[772 A.2d 494]

No. 99-390

Present: **Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.**

Opinion Filed March 2, 2001

*Robert H. Sarvis,* Pro Se, Brattleboro, Plaintiff-Appellant.

*Michael J. Harris* of *Sutherland, Collins, McMahon & Harris, Inc.,* Burlington, for Defendant-Appellee.

**Skoglund, J.** Plaintiff Robert Sarvis appeals the grant of summary judgment in favor of defendant Vermont State Colleges. Plaintiff contends: (1) the court erred when it found defendant had just cause to terminate his employment contracts; and (2) he is entitled to Title VII protection because defendant terminated him for his criminal history. We affirm.

The material facts in this case are not in dispute. On March 13, 1995, plaintiff was convicted of five counts of bank fraud and sentenced to serve forty-six months in prison. He was ordered to pay over $12 million in restitution to five banks in order of priority, including two million dollars to the Proctor Bank, a Vermont bank, which was given top payment priority. He was incarcerated from April 4, 1995 to August 17, 1998, at the Allenwood prison in Lewisburg, Pennsylvania, where he worked in the prison's electric department. In August of 1998, two weeks after he was released from prison, plaintiff applied for an adjunct professor position at Community College of Vermont (CCV), a division of defendant. Plaintiff provided defendant with a resume, in which he indicated that from 1984-1998 he was "President and Chairman of the Board" of "CMI International Inc., Boston, Massachusetts." In describing his duties, plaintiff indicated he was "[r]esponsible for all operations and financial matters." He ended his

summary with the following: "[f]rom 1995-1998 this company was sold off by various divisions and I have retired." Defendant replied, and asked plaintiff to fill out an "Instructor Information" form. On September 30, 1998, plaintiff submitted this form and, in the space provided to list applicant's "Most Recent Previous Employment," plaintiff referred his reader to the resume he submitted with his August letter.

Plaintiff also applied for a position as CCV's Coordinator of Academic Services, and submitted a second resume in connection with this application. The second resume was similar to the first, except he changed the last line of his description of duties at CMI to read: "From 1995-1998 this company was sold off by various divisions. I have since been semi-retired." Under the "Business Experience" heading, he also added a line, "1998-present" "Semi-retired. Adjunct Instructor of Business at Colby-Sawyer College and Franklin Pierce College." In a memorandum to a CCV administrator, plaintiff also advised that "I have not 'worked' for almost four years," and discouraged defendant from contacting management at Franklin Pierce for additional references.

Plaintiff provided defendant with additional application materials, attempting to secure a teaching position. Plaintiff listed for defendant the classes he believed defendant would find him "well equipped to teach." He highlighted business law and business ethics as courses in which he had "the highest level of capability and interest." He alerted defendant that he had "a great interest and knowledge of business law" and that he believed he would do "an excellent job" teaching a business ethics class because this subject was "of particular concern" to him.

In response to the information plaintiff provided, defendant entered into three employment contracts with plaintiff, covering plaintiff's duties as academic coordinator, teacher, and independent studies instructor. After plaintiff commenced performance on the coordinator and independent study contracts, his probation officer alerted defendant to plaintiff's criminal history. Defendant terminated plaintiff before the expiration of his contracts of employment,[1] citing,

> [t]he nature of the federal offenses (involving dishonesty), the gravity of the offenses (multiple counts of bank fraud, over $12 million dollars in restitution) the presence of local victims

---

[1] Plaintiff was fired before he began teaching the spring semester course contemplated by the teaching contract.

(Proctor Bank and any other Vermont victims) and the potential harm to CCV's reputation, [as] substantial factors contributing to the termination decision.

Plaintiff filed a complaint alleging that defendant was liable for breach of all three contracts and wrongful termination. Plaintiff later amended the complaint to add a demand for punitive damages based on defendant's alleged Title VII violation. Plaintiff moved for summary judgment contending there were no disputed facts, and that he was entitled to judgment as a matter of law on all counts of the complaint. Defendant opposed the motion, and also moved for summary judgment on all claims. Defendant's summary judgment motion asserted that plaintiff was fired during the probationary period during which he was subject to termination for any reason, and plaintiff's breach of contract claims are barred due to his resume fraud and criminal background history, and fraud in the inducement permitted CCV to rescind the contracts. The court granted defendant's motion, concluding that it was reasonable for defendant to discharge plaintiff because of his material misrepresentations about his criminal record, and that plaintiff had notice that dishonesty and fraud were just cause for dismissal. See *In re Towle*, 164 Vt. 145, 150, 665 A.2d 55, 60 (1995).

In reviewing a grant of summary judgment, this Court shall apply the same standard as the trial court. *City of St. Albans v. Northwest Reg'l Planning Comm'n*, 167 Vt. 466, 469, 708 A.2d 194, 196 (1998). Summary judgment will be granted where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Viles v. Vermont State Colleges*, 168 Vt. 459, 461, 724 A.2d 448, 450 (1998). The party opposing the motion will be granted the benefit of all reasonable doubts and inferences. *City of Burlington v. National Union Fire Ins. Co.*, 163 Vt. 124, 127, 655 A.2d 719, 721 (1994).

## I.

On appeal, plaintiff first contends that defendant had no cause to dismiss him. Plaintiff claims that because his criminal history predated his employment, he did not engage in misconduct while employed with defendant that would justify termination. Plaintiff also claims that he did not make any misrepresentations during the pre-employment process that could support a just cause dismissal.

██ An employment contract for a definite term may not be terminated by the employer before the expiration of that term except for just cause. See *Lambert v. Equinox House, Inc.*, 126 Vt. 229, 231,

227 A.2d 403, 404-05 (1967) (employer must show just cause for discharge of an employee before expiration of contract for hire term). The test for a just cause dismissal is whether "the employee's conduct was egregious enough that the discharge was reasonable, and second, that the employee had fair notice, express or implied, that such conduct could result in discharge." *Nadeau v. Imtec, Inc.*, 164 Vt. 471, 475, 670 A.2d 841, 844 (1995).

We have held that dishonesty can provide reasonable grounds for a just cause termination. *In re Graves*, 147 Vt. 519, 524, 520 A.2d 999, 1002 (1986). We have not, however, had occasion to decide whether resume fraud or misrepresentation during the hiring process constitutes just cause for dismissal. See *Genier v. Department of Employment Sec.*, 140 Vt. 453, 455, 438 A.2d 1116, 1117 (1981) (Reversing on other grounds, we "need not decide whether misrepresentation can, as a matter of law, constitute misconduct."). Because plaintiff's suit includes breach of employment contracts, we will look to contract law to inform our decision whether fraudulent inducement during pre-employment negotiations may constitute just cause for termination.

 It is well established that a party induced into a contract by fraud or misrepresentation can rescind the contract and avoid liability for any breach thereon. See *Negyessy v. Strong*, 136 Vt. 193, 194, 388 A.2d 383, 384-85 (1978) (Where a party was induced to enter into a contract by fraud or misrepresentation, "the deceived party may seek the remedy of being excused from the contract through rescission, or seeking the damages occasioned by the fraud."). A misrepresentation is fraudulent when made with knowledge of its falsity. See *Smith v. DeMetre*, 119 Vt. 73, 79, 118 A.2d 346, 351 (1955). Where the procurer of a statement knew it was false, materiality is not required. *New York Life Ins. Co. v. McLaughlin*, 112 Vt. 402, 408, 26 A.2d 108, 111 (1942). Materiality is required where the mistake or false statement was not intentionally made, see *id.*, and may be proved where the statement is "likely to induce a reasonable person to manifest his assent, or if the maker knows that it would be likely to induce" such assent. Restatement (Second) of Contracts § 162(2) (1981). Unlike a fraud action seeking damages in tort, a party seeking to rescind a fraudulently induced contract is not required to prove its case by clear and convincing evidence. *Union Bank v. Jones*, 138 Vt. 115, 121, 411 A.2d 1338, 1342 (1980) (noting distinction between the elements for an action in fraud and deceit, and fraudulent misrepresentation, providing grounds for rescission of a contract).

We have applied this well-established principle to a variety of contractual relationships. See, e.g., *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 132-34, 636 A.2d 744, 747-48 (1993) (discussing fraudulent inducement in a contract for professional services); *Larochelle v. Komery*, 128 Vt. 262, 267-69, 261 A.2d 29, 33-34 (1969) (discussing misrepresentation of value of consideration offered in sale of stock in hotel); *Collier v. Nolan*, 125 Vt. 82, 84-87, 211 A.2d 265, 268-70 (1965) (finding misrepresentation of milk production of farm herd offered in sale of dairy farm); *Gramatan Nat'l Bank & Trust Co. v. Beecher*, 121 Vt. 39, 48-49, 146 A.2d 246, 252 (1958) (discussing fraud in the inducement of a contract and note).

█ Relying on this principle, other courts have held that conduct extreme enough to rescind an employment contract is sufficiently egregious to warrant a just cause dismissal. See *Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 549 (Colo. 1997) (Resume fraud and misstatements during the hiring process justify dismissal where "the employee's fraud was material and that a reasonable, objective employer would not have hired the employee if it had discovered the misrepresentation at the outset" and "the employee concealed or misrepresented the fact or facts with the intent of creating a false impression in the mind of the employer."); *Johnson v. Honeywell Info. Sys., Inc.*, 955 F.2d 409, 414 (6th Cir. 1992) ("As a general rule, in cases of resume fraud, summary judgment will be appropriate where the misrepresentation or omission was material, directly related to measuring a candidate for employment, and was relied upon by the employer in making the hiring decision."). We agree that principles of fraudulent inducement support a rule allowing an employer to avoid liability for breach of contract arising from an employment relationship induced by an employee's fraud. Thus, misrepresentation during the hiring process can be a basis for rescission of an employment contract. Further, we hold as a matter of law, such misrepresentation can constitute misconduct sufficient to support a just cause dismissal.

█ Plaintiff fraudulently induced defendant into entering into the employment contracts. Plaintiff misrepresented material facts related to his candidacy upon which defendant relied in making its employment decision. In both resumes, plaintiff omitted the fact that he was in prison from 1995 through 1998. Instead, he misrepresented his work history with the intent of creating the false impression of how he spent those years. During that time, he claimed he was, as president and

chairman of the board of CMI, "[r]esponsible for all operations and financial matters" of CMI. In reality, he was in prison and working in the prison's electric department. Also during the hiring process, in a written response to defendant's coordinator of academic services, plaintiff declared that he had not worked for almost four years and that he had not worked for someone else since 1984. Plaintiff knew this statement was false and deceptive because four months earlier, seeking district court approval for employment in Maine under a post-prison relocation plan, he admitted that "[a]t Allenwood FPC I currently work in the Electrical Department." Plaintiff's assertions and omissions were not in accord with the facts, and were offered for the sole purpose of affecting the employment decision. See Restatement (Second) of Contracts §§ 159 ("A misrepresentation is an assertion that is not in accord with the facts."); 162 ("A misrepresentation is fraudulent if the maker intends his assertion to induce a party to manifest his assent and the maker . . . knows or believes that the assertion is not in accord with the facts . . . .").

■ Plaintiff seeks to avoid rescission and enforce the contracts by faulting defendant for failing to discover his criminal background. Plaintiff, however, cannot enforce the contract where his own actions hampered defendant's inquiry. See *Sutfin v. Southworth*, 149 Vt. 67, 70, 539 A.2d 986, 988 (1987) (where nature of misrepresentation or fraudulent concealment itself led party to forbear from making full inquiry, recovery will not be denied). Plaintiff discouraged defendant from contacting his current employers at Franklin Pierce for references. In a letter to defendant's academic services coordinator, plaintiff demurred that he did "not believe Franklin Pierce management could give an evaluation of me at this short date and I feel it would be unfair of me to ask that." What plaintiff failed to reveal to defendant was that he had disclosed his criminal history to Franklin Pierce. Plaintiff's effort to discourage defendant from contacting Franklin Pierce management for a reference succeeded in dissuading defendant from making full inquiry into his background.

Plaintiff also argues that his nondisclosure of his criminal history does not constitute fraud or misrepresentation because he had no duty to disclose his criminal past.[2] Contrary to plaintiff's claim, plaintiff's misrepresentation involved more than nondisclosure. We have found fraud from partial disclosure.

---

[2] This assertion seems to be based on the fact that the conditions of his probation did not necessarily require him to reveal his criminal history to others.

> Where one has full information and represents that he has, if he discloses a part of his information only, and by words or conduct leads the one with whom he contracts to believe that he has made a full disclosure and does this with intent to deceive and overreach and to prevent investigation, he is guilty of fraud against which equity will relieve, if his words and conduct in consequence of reliance upon them bring about the result which he desires.

*Crompton v. Beedle*, 83 Vt. 287, 298, 75 A. 331, 334-35 (1910). The misrepresentation in this case occurred through plaintiff's partial disclosure of his past work history and references and his effort to limit defendant's inquiry into his past. Plaintiff was not silent; he carefully drafted his resumes and supplemental materials to lead defendant to believe he had made a full disclosure about his past and his qualifications. He listed classes in business ethics and law in which he claimed he had the highest level of capability and knowledge but failed to mention his felony bank fraud conviction. Plaintiff assured defendant that making additional inquiries into his background would have revealed "more of the same" type of information as that offered by the references plaintiff supplied. This was not true. Contact with plaintiff's probation officer or supervisor at the Allenwood prison would have notified defendant of plaintiff's fraud convictions, period of incarceration, and work history at the prison. We agree with the trial court's conclusion that plaintiff misrepresented material facts related to his candidacy upon which defendant relied in making its employment decision.

■ The trial court correctly held that plaintiff misrepresented his past and that it was reasonable for defendant to fire him. Because honesty is an implicit duty of every employee, plaintiff had notice that his misrepresentation was grounds for dismissal. See *In re Carlson*, 140 Vt. 555, 560, 442 A.2d 57, 60 (1982). The trial court did not err in concluding that defendant was entitled to judgment as a matter of law as to plaintiff's contract claims.

■ Plaintiff contends neither law nor public opinion recognizes termination for criminal history unrelated to the job as good cause for dismissal. We affirm the decision below because plaintiff misrepresented his past to create a false impression to persuade defendant to hire him. As a matter of law, just cause existed to fire plaintiff under these grounds. We need not determine whether the mere fact of a prior criminal history can support a just cause dismissal.

## II.

▆ Plaintiff next challenges the grant of summary judgment dismissing his Title VII claim. Plaintiff contends that Title VII prohibits termination of an employee solely because of his criminal history where the criminal history is unrelated to the job. Title VII, however, does not list criminal history as a class or status entitled to protection from employment discrimination. See 42 U.S.C. § 2000e-2(a)(1). The cases cited by plaintiff do not support his argument that Title VII protection extends to employees based solely on their criminal history. Instead, Title VII protection extended to the employees in the cited cases because the employers made distinctions based on race between workers with criminal histories. What distinguished the disparate employment treatment was not the workers' criminal activity but rather the workers' race. See *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 280 (1976) (Title VII prohibits racial discrimination against white employees where an employer fires white employees accused of stealing while retaining black employees charged with the same offense.). In fact, in *McDonald*, the United States Supreme Court recognized that the employer "may decide that participation in a theft of cargo may render an employee unqualified for employment." *Id.* at 283. The Court admonished only that if the employer adopted this measure, "this criterion must be applied, alike to members of all races." *Id.* (internal quotations omitted).

Here plaintiff has not challenged that defendant has treated him differently because of his race or some other protected characteristic. Accordingly, he cannot establish a prima facie case that defendant violated Title VII, and the court properly dismissed his claim. Plaintiff has not specifically pled a disparate impact claim, and we need not consider it here. See *Lavalley v. E.B. & A.C. Whiting Co.*, 166 Vt. 205, 213, 692 A.2d 367, 372 (1997). Even if he had included a disparate impact claim, plaintiff has failed to offer any evidence that a policy of defendant to terminate employees with criminal records disparately impacted on older, white, or another protected class of employees of which plaintiff was a member. See, e.g., *id.* at 213-14, 692 A.2d at 372; Decision No. 81-7, 27 Fair Empl. Prac. Cas. 1780, 1780 (BNA 1980) (reasonable cause to believe employer discriminated where blanket policy of not hiring applicants with criminal conviction disparately impacts blacks as a class); Decision No. 78-35, 26 Fair Empl. Prac. Cas. 1755, 1756 (BNA 1978) (employment practice of disqualifying persons

with criminal convictions can be expected to have a disproportionate adverse impact on blacks).

Plaintiff contends that *Massey v. Trump's Castle Hotel & Casino*, 828 F. Supp. 314 (D.N.J. 1993), compels a different result. We disagree. *Massey* was an after acquired evidence case in which defendant discovered employee's misconduct after defendant allegedly made its termination decision based on race. "In the after acquired evidence cases, . . . the employment decision was based solely on illegal grounds. Absent those illegal motives, the employee would still be employed." *Id.* at 322. The court held that the employee's state and federal anti-discrimination statutory claims would not be barred by after acquired evidence of the employee's misconduct. *Id.* at 324-25. The court also held, however, as to the employee's breach of contract claim:

> [A]n employer may not be held liable for breach of an employment contract, if it can show that it had the power to void the contract due to reliance on material misrepresentations, even where the employer was unaware of that power when the breach occurred. Unlike the policies underlying the anti-discrimination statutes, there is no competing policy under ordinary contract principals [sic] to discourage an employer's breach of contract.

*Id.* at 325.

This is not an after acquired evidence case. Defendant fired plaintiff precisely because of plaintiff's misrepresentations during the hiring process. The court properly dismissed plaintiff's statutory claims, not because of plaintiff's underlying misconduct, but because Title VII does not prohibit employment decisions based on a person's criminal history.

Plaintiff's misrepresentation regarding his past work history and references warrants rescission of the employment contracts and supports a just cause dismissal.

*Affirmed.*