# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

August Term, 2005

(Argued: September 14, 2005

Decided: October 17, 2005

Docket No. 03-257

Errata Filed: November 7, 2005)

PERCY JEFFREYS,

*Plaintiff-Appellant*,

v.

THE CITY OF NEW YORK, THE NEW YORK CITY POLICE
DEPARTMENT, EMMANUEL ROSSI, Police Officer, Shield No.
25843, and DAVID MONTANEZ, Police Officer, Shield No.
27869,

*Defendants-Appellees*,

JOHN DOES, Police Officers,

*Defendants.*

Before: MESKILL and CABRANES, *Circuit Judges*, and NEVAS, *District Judge.*[*]

Plaintiff-Appellant appeals from a July 18, 2003 Opinion and Order of the United States

District Court for the Southern District of New York (Shira A. Scheindlin, *Judge*) granting summary

judgment dismissing his suit, which was brought pursuant to 42 U.S.C. § 1983 to recover damages

against New York City police officers who allegedly beat him and threw him out of a third-story

window. *Jeffreys v. Rossi*, 275 F. Supp. 2d 463 (S.D.N.Y. 2003).

The question presented is whether a district court errs in granting defendants' motion for

summary judgment on the basis that a plaintiff's testimony—which was largely unsubstantiated by any

other direct evidence—was "so replete with inconsistencies and improbabilities" that no reasonable

---

[*] The Honorable Alan H. Nevas, United States District Judge for the District of Connecticut, sitting by
designation.

juror would undertake the suspension of disbelief necessary to credit the allegations made in the plaintiff's complaint.

Notwithstanding the general rule that district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage, we hold that, in the circumstances presented—where the plaintiff relied almost exclusively on his own testimony—a district court may, for the purpose of determining whether there are any "genuine issues of material fact," make assessments about whether a reasonable jury could credit a plaintiff's testimony.

Affirmed.

> KIMBERLY B. KABNICK (Douglas F. Broder, Kirkpatrick & Lockhart Nicholson Graham LLP, New York, NY; Roberto C. Martens, Jr., Nixon Peabody LLP, New York, NY, *on the brief*), Kirkpatrick & Lockhart Nicholson Graham LLP, New York, NY, *for Plaintiff-Appellant.*
>
> GRACE GOODMAN (Larry A. Sonnenshein, *of counsel;* Michael A. Cardozo, Corporation Counsel of the City of New York, *on the brief*), Office of the Corporation Counsel of the City of New York, New York, NY, *for Defendants-Appellees.*

JOSÉ A. CABRANES, *Circuit Judge*:

Plaintiff-Appellant Percy Jeffreys appeals from a July 18, 2003 Opinion and Order of the United States District Court for the Southern District of New York (Shira A. Scheindlin, *Judge*) granting summary judgment dismissing his suit, which was brought pursuant to 42 U.S.C. § 1983 to recover damages against several New York City police officers who allegedly assaulted him before throwing him out of a third-story window. *Jeffreys v. Rossi*, 275 F. Supp. 2d 463 (S.D.N.Y. 2003).

The question presented is whether the District Court erred in granting defendants' motion for summary judgment on the basis that Jeffreys's testimony—which was largely unsubstantiated by any other direct evidence—was "so replete with inconsistencies and improbabilities" that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in his

complaint. *See Jeffreys*, 275 F. Supp. 2d at 475.

Notwithstanding the general rule that district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage, we hold that, in the circumstances presented—where Jeffreys relied almost exclusively on his own testimony—the District Court did not err in concluding, in the course of determining whether there were any "genuine issues of material fact," that no reasonable jury could have credited Jeffreys's testimony.

Accordingly, the judgment of the District Court is affirmed.

## BACKGROUND

While the facts of this case, both undisputed and disputed, are set forth more fully in the District Court's comprehensive opinion, *Jeffreys*, 275 F. Supp. 2d at 465-471, for the purposes of this appeal we focus on the evidence presented by plaintiff in support of his claims. In February 1998, the 40th Precinct Burglary Unit identified Percy Jeffreys as a suspect in a series of public school burglaries. *Id.* at 465-66. In the early morning hours of February 10, 1998, while posted inside Public School 40 ("P.S. 40") in the Bronx, police officers Emmanuel Rossi and Jorge Gonzalez observed an intruder, later identified as Jeffreys, in the vicinity of the school courtyard. After calling for back-up, officers Rossi and Gonzalez, joined by Sergeant Bedford and Officers Martell, Tessitore, and Montanez, then proceeded to the third floor of the school, where they had heard noises. *Id.* at 466. Meanwhile, Jeffreys had broken into P.S. 40 and made his way up to the third floor via an inside stairway. Jeffreys had shattered the window on the door to Classroom 312, reached inside to turn the locked doorknob, and entered the room. *Id.* (relying upon Jeffreys's deposition and affidavit).

According to Jeffreys, while inside Classroom 312, he heard a noise, opened the classroom window which faced the street to check whether any police officers might be approaching, and then hid under a desk in the classroom. Aff. of Percy Jeffreys ("Jeffreys Aff.") ¶ 4. Jeffreys next recalls

that "[s]omeone" entered the room, shined a flashlight in his face, and identified himself as a police officer, whereupon Jeffreys slowly stood and put his hands in the air. *Id.* ¶¶ 5-7. At that point, Jeffreys asserts that the police officer landed several blows to his head, body, and arms with the flashlight. *Id.* ¶ 9. Jeffreys claims that the room at some point filled with officers of an unspecified number, many of whom joined in the beating, striking him in the head, chest, back, and arms. *Id.* ¶¶ 9-10; Dep. of Percy Jeffreys ("Jeffreys Dep."), Jan. 3, 2003, at 97-105. At some point during the alleged beating, Jeffreys lost consciousness. Jeffreys Aff. ¶ 11. He then awoke with searing pain in his leg on the pavement directly below an open window of the third-story classroom. He infers, but does not recall (due to his lack of consciousness), that one or more of the police officers must have thrown him out of the window because he does not remember jumping out or falling while attempting to escape. *See id.* ¶ 12.

Officer Rossi's account differs substantially. Rossi claims that he shined a flashlight through the broken window of Classroom 312 and discovered Jeffreys looting school property. Dep. of Emmanuel Rossi ("Rossi Dep."), Dec. 17, 2002, at 134, 138. After shouting "[P]olice, don't move!", Rossi attempted to reach inside the classroom window to unlock the door, but before he could gain entry, Jeffreys dropped the stolen items and jumped out of an open window on the opposite end of the classroom. *Id.* at 138-40. Rossi further asserts that upon seeing Jeffreys exit the window, he assumed that Jeffreys must have been descending via stairs reachable from the window, and thus he shouted to his nearby fellow officers, "He's going down the stairs!". *Id.* at 156-57. The remaining officers on the scene testified that they never entered Classroom 312 while Jeffreys was still in the building. *Jeffreys*, 275 F. Supp. 2d at 467.

The record confirms, and Jeffreys does not dispute, that on at least three occasions he confessed to having jumped out of the third-story window of the school building. First, Jeffreys told medical personnel on the day of the incident that he had "'jumped three stories'" and that "'[he]

4

hurt [him]self.'" *Id.* at 469 (quoting Decl. of Ramnath Kapoor, M.D. ¶ 3, and Admission Assessment and Screening Record, at JEF00161). Second, in an interview conducted by Sergeant Rene Moran on February 12, 1998—just two days after the incident—Jeffreys disclosed that "'he attempted to flee out of the classroom window, lost his footing and fell to the concrete below, injuring his right leg.'" *Id.* at 468 (quoting Investigating Officer's Report of Feb. 12, 1998). At that time, Jeffreys made no mention of any police misconduct; in fact, he stated that the first time he saw any police officers was when he was on the ground outside the school.[1] *Id.* Third, on February 19, 1998, Jeffreys informed risk screening personnel from the New York City Department of Corrections that he had "jumped out [of a] 3rd floor window." *Id.* at 470.

On February 10, 1998, Jeffreys signed a written confession to twelve burglaries, but this confession contained no reference to any police mistreatment. *Id.* At his arraignment, guilty plea, and sentencing, Jeffreys also made no mention of any beating or defenestration. *Id.* Jeffreys first publicly stated that he had been thrown out of a window by police officers in a conversation with Dr. Charles Bendheim of the Greenhaven Correctional Facility nine months after the incident allegedly occurred. *Id.* Against the weight of these confessions and failures to make his accusations known publicly, Jeffreys offers (1) the statements of his aunt Margaret Smith as evidence that he called her from jail shortly after his arrest and told her that he had been thrown out of a school window by police officers, *id.* at 471, and (2) the statements of LaTonya Baskerville, the mother of his son, to establish that at some time in 1999 or 2000, Jeffreys told her of both the attack and having been thrown out of the window, *id.*

Regarding Jeffreys's allegation that he was beaten at the hands of one or more police officers in Classroom 312, Jeffreys cannot identify any of the individuals who he alleges participated in the

---

[1] When asked during his deposition whether he had told a doctor at Lincoln Hospital that he had "jumped from the third floor window of the school to land on the concrete below," Jeffreys responded that he had not. Jeffreys Dep. at 179.

attack, nor can he provide any description of their ethnicities, physical features, facial hair, weight, or clothing on the night in question. *Id.* at 470. Jeffreys cannot recall how many police officers were in the classroom at any given time. *Id.*

Emergency medical personnel who examined Jeffreys immediately after his fall reported that he had not lost consciousness, and this was corroborated by Jeffreys's own statements to Dr. Ranmath Kapoor, who examined Jeffreys at Lincoln Hospital just hours after the incident. *Id.* at 469. Upon examination, Dr. Kapoor found no evidence of any head trauma. *Id.* This assessment was confirmed by Dr. Stephen Kardon, who ultimately concluded, after reviewing the CAT scan, hospital records, and ambulance reports, that the absence of any evidence of external injury to Jeffreys's scalp or facial skin ruled out the possibility that Jeffreys "'suffered a blow to the head with a hard round object such as a flashlight.'" *Id.* (quoting Aff. of Stephen Kardon, M.D. ¶¶ 6, 15).

After reviewing the parties' divergent accounts of the circumstances leading to Jeffreys's arrest on February 10, 1998 and summarizing the evidence in the record, the District Court held that Jeffreys's suit for excessive force—which "relie[d] exclusively on affidavits of family members and friends, his own testimony, and inferences drawn from medical records, [a police] report, and the officers' testimony"—raised no genuine issues of material fact. *Id.* at 475. In reaching this conclusion, the District Court found that "Jeffreys'[s] own testimony [was] so replete with inconsistencies and improbabilities that a reasonable jury could not find that excessive force was used against him." *Id.* The District Court justified its decision in part on the ground that "permitting Jeffreys to present such incredulous testimony at trial would be a terrible waste of judicial resources and a fraud on the court." *Id.* at 477-78.

## DISCUSSION

On appeal, Jeffreys principally asserts that the District Court impermissibly based its dismissal of his complaint on its assessment of his credibility as a witness, a function strictly reserved

6

for the jury. Pet'r's Br. at 18. Jeffreys further argues that his affidavit and deposition testimony—when taken in conjunction with "certain inferences that support his version of the incident from the medical evidence, the police communications 'SPRINT' report, and inconsistencies in the police officers' own testimony," *id.* at 19—were sufficient to defeat summary judgment.

We review the District Court's grant of summary judgment *de novo. Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002). Summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" for these purposes when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The burden of demonstrating that no material fact exists lies with the party seeking summary judgment. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor. *Niagra Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir. 2003). "[T]he judge must ask . . . not whether . . . the evidence unmistakably favors ones side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996); *see also Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying th[e] [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."); *United States v. Rem*, 38 F.3d 634, 644 (2d Cir. 1994) (same).

7

However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). To defeat summary judgment, therefore, nonmoving parties "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and they "may not rely on conclusory allegations or unsubstantiated speculation." *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (internal quotation marks omitted); *see also Trans Sport, Inc. v. Starter Sportswear, Inc.*, 964 F.2d 186, 188 (2d Cir. 1992) (noting that summary judgment cannot be defeated "on the basis of conjecture or surmise") (internal quotation marks omitted). At the summary judgment stage, a nonmoving party "must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of N.Y.*, 132 F.3d 145, 149 (2d Cir. 1998).

As the District Court highlighted in its summary of the facts, there are many material issues of fact disputed in the instant case. *See Jeffreys*, 275 F. Supp. 2d at 466-68. Among these issues are (1) whether Jeffreys jumped, fell, or was thrown by the police out of a third-story school classroom window, (2) whether Jeffreys was struck in the head with a flashlight by one or more police officers while still inside the school classroom, and (3) whether Jeffreys was otherwise physically assaulted by one or more police officers, either before or after his alleged defenestration.

Our inquiry focuses on whether the District Court erred in concluding, upon review of the record as a whole, that there were no *genuine* issues of material fact in the instant case—that is, that even after drawing all inferences in the light most favorable to Jeffreys, no reasonable jury could have issued a verdict in his favor. While it is undoubtedly the duty of district courts not to weigh the credibility of the parties at the summary judgment stage, in the rare circumstance where the plaintiff relies almost exclusively on his own testimony, much of which is contradictory and incomplete, it will be impossible for a district court to determine whether "the jury could reasonably find for the plaintiff," *Anderson*, 477 U.S. at 252, and thus whether there are any "genuine" issues of

8

material fact, without making some assessment of the plaintiff's account. Under these circumstances, the moving party still must meet the difficult burden of demonstrating that there is no evidence in the record upon which a reasonable factfinder could base a verdict in the plaintiff's favor. *See Fischl v. Armitage*, 128 F.3d 50, 56 (2d Cir. 1997).

In *Fischl*, a case in which a prisoner brought a § 1983 suit against correctional officers in connection with a prison assault, we reversed a district court's grant of summary judgment on the basis that the plaintiff's

> testimony that he was beaten was supported by photographs taken of him on the afternoon [of his alleged attack] showing severe bruises; by hospital records showing, *inter alia*, three fractures in the head area; and by the opinion of a physician that his injuries were blunt-force injuries consistent with his having been kicked and that the blowout fracture of [plaintiff's] eye socket could not possibly have been self-inflicted.

*Id.*

By contrast, in *Aziz Zarif Shabazz v. Pico*, 994 F. Supp. 460, 468-71 (S.D.N.Y. 1998), another § 1983 case involving allegations of excessive force against correctional officers, then-District Judge Sotomayor granted summary judgment, expressly relying on the absence of any corroborating evidence in the record and highlighting the many inconsistencies and contradictions within the plaintiff's deposition testimony and affidavits. As Judge Sotomayor stated in *Pico*, "when the facts alleged are so contradictory that doubt is cast upon their plausibility, [the court may] pierce the veil of the complaint's factual allegations . . . and dismiss the claim." *Pico*, 994 F. Supp. at 470 (internal quotation marks omitted).[2]

In the circumstances presented in the instant case—where (1) the District Court found nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and

---

[2] We have stated elsewhere that "[i]f there is a plausible explanation for discrepancies in a party's testimony, the court considering a summary judgment motion should not disregard the later testimony because of an earlier account that was *ambiguous, confusing, or simply incomplete*." *Langman Fabrics v. Graff Californiawear, Inc.*, 160 F.3d 106, 112 (2d Cir. 1998) (emphasis added). Here, however, Jeffreys's multiple admissions that he jumped out of the third story window, while certainly inconsistent with his later testimony, were neither ambiguous, confusing, nor incomplete. On the contrary, these statements clearly conveyed a simple message: that Jeffreys thrust himself out of the window. We therefore concur with the District Court that Jeffreys failed to explain away these obvious inconsistencies with any "plausible explanation." *See Jeffreys*, 275 F. Supp. 2d at 475 n.17.

incomplete testimony, and (2) the District Court, even after drawing all inferences in the light most favorable to the plaintiff, determined that "no reasonable person could believe Jeffreys'[s] testimony," *Jeffreys*, 275 F. Supp. 2d at 477—we hold that the District Court did not err by awarding summary judgment. Because "[n]o reasonable person would undertake the suspension of disbelief necessary to give credit to the allegations made in [the] complaint," *Schmidt v. Tremmel*, No. 93 Civ. 8588, 1995 U.S. Dist. LEXIS 97, at *10-*11 (S.D.N.Y. Jan. 6, 1995), we conclude that summary judgment was appropriate.

## CONCLUSION

In sum, we hold that the District Court did not err in granting defendants' motion for summary judgment on the basis that Jeffreys's testimony—which was largely unsubstantiated by any other direct evidence—was "so replete with inconsistencies and improbabilities" that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in his complaint. *See Jeffreys*, 275 F. Supp. 2d at 475.

*     *     *     *

We have considered all of Jeffreys's arguments and have found each of them to be without merit. Accordingly, we **AFFIRM** the judgment of the District Court granting defendants' motion for summary judgment and dismissing plaintiff's suit.