William **HINCHLIFFE**, Plaintiff,

v.

**COSTCO WHOLESALE CORPORATION,** Defendant.

**Civil Action No. 2:06–CV–83.**

United States District Court, D. Vermont.

Sept. 29, 2009.

---

**420**

Pietro J. Lynn, Esq., Lynn, Lynn & Blackman, P.C., Burlington, VT, for Plaintiff.

Devjani Mishra, Esq., Lorie E. Almon, Esq., Seyfarth Shaw LLP, New York, NY, John T. Leddy, Esq., McNeil, Leddy & Sheahan, P.C., Burlington, VT, for Defendant.

### OPINION and ORDER

JOHN M. CONROY, United States Magistrate Judge.

Plaintiff William Hinchliffe brings this civil action against his former employer Costco Wholesale Corp. for breach of contract.[1] Presently before the Court is Costco's Third Motion for Summary Judgment, which is styled as its "Renewed Second Motion for Summary Judgment."[2] (Doc. 111). In this Third Motion, Costco

makes precisely the same argument that the Court considered and rejected before: because the so-called "after acquired evidence doctrine" provides a complete defense to Hinchliffe's contract claim, and because its application here does not depend on the resolution of any genuine factual disputes, Costco is entitled to summary judgment. (Docs. 88 and 114). The only additions to the record for this Motion are the newly-taken depositions of two Costco supervisors, both of which support Costco's version of the relevant facts.

For the reasons stated below, Costco's Third Motion for Summary Judgment (Doc. 111) is DENIED.

### I. FACTUAL BACKGROUND

Since the facts relevant to Hinchliffe's contract claim are explained in the Court's prior Order (Doc. 74 at 2–13), this Opinion will focus on those facts relevant to Costco's asserted affirmative defense. The facts below are undisputed unless otherwise noted.

#### A. Hinchliffe's Employment at Costco

Hinchliffe began working at Costco's Colchester, Vermont warehouse in 1993. In October 1997, Hinchliffe injured his back while working in Costco's tire shop. The day after the accident Hinchliffe injured his back again while working in Costco's cooler. Due to these injuries, Hinchliffe took workers' compensation leave for about a year.

Hinchliffe returned to work for Costco in October 1998, but with doctor imposed

---

1. Hinchliffe initially brought a retaliation claim as well, but the Court dismissed that count in an Order dated June 18, 2008. (Doc. 74). In that same Order, the Court denied summary judgment as to Hinchliffe's breach of contract claim, and set it aside for trial. *Id.*

2. The Court denied Costco's Second Motion for Summary Judgment following a hearing on April 7, 2009. (Doc. 103).

work restrictions. His doctor specified that he could not walk, sit, or stand for more than one hour at a time and could lift no more than 15 pounds. Costco accommodated these restrictions by reassigning Hinchliffe to a security position.

On May 3, 1999, Costco further accommodated Hinchliffe's work restriction by moving him to a "comparative shopper" or "comp shopper" position. As a comparative shopper, Hinchliffe was responsible for researching the pricing and merchandising techniques of Costco's competitors. This required him to visit other stores in the area and report back to Costco as to how these stores priced and marketed particular items. Costco provided Hinchliffe with a list of items to research at the start of each work week. One of Hinchliffe's initial supervisors as a comparative shopper was Dan Wight, who was the Assistant Manager at the Colchester warehouse with responsibility over Merchandising.

In 2003, Costco changed Hinchliffe's position again to include 50% comparative shopping and 50% outside marketing. The warehouse manager at the time, Billy Wallace, made this change because he believed that Costco's needs required only 20 hours of comparative shopping per week. Hinchliffe's new role as part-time outside marketer required him to work with Costco business members, increasing business sales and member renewals and new sign-ups. As with comparative shopping, Hinchliffe often traveled to other area businesses as part of his outside marketing duties.

Hinchliffe reported to Cory Barber when he first began this mixed-position, but in February 2004 Barber stepped down and Randy Dubie became the Membership/Marketing Manager and Hinchliffe's immediate supervisor.

In January 2004, Alex Coumans replaced Billy Wallace as the general manager of the Colchester warehouse. Coumans decided to eliminate the comparative shopper position, and, in February 2004, he placed Hinchliffe in a full-time outside marketer position. Costco claims that it created this full-time position to accommodate Hinchliffe's work restrictions, but Hinchliffe claims that the position already existed. (Doc. 116 ¶ 32). In any case, Hinchliffe was able to perform the outside marketing position without any substantial physical problems. Hinchliffe remained in this position until Costco terminated his employment (and did so, Hinchliffe alleges, in violation of Costco's Employee Agreement) on April 7, 2006.

### B. Costco's Timekeeping Policies

There are two ways in which hourly Costco employees at the Colchester warehouse can enter their time-worked into the payroll system. In general, employees are required to punch in and out using a time clock at the beginning and end of each shift and for authorized breaks. According to Costco, even those employees who conduct work outside of the warehouse are required to punch in and out at the warehouse at the start and end of each shift. (Doc. 34). The time clock automatically transmits the recorded times to Costco's payroll software.

Alternatively, employees may write the time they begin and/or end work in the "Exception Log," which is a document maintained near the employee entrance of the warehouse. When time worked is recorded in the Exception Log, Costco's Payroll Clerk manually enters the recorded times into the payroll software.

The Parties agree that the Exception Log should be used when an employee fails or is unable to use the time clock, and that on such occasions the employee is required to record his or her actual hours

worked, and to have management approve the Exception Log entry. (Doc. 113 ¶ 37; Doc. 116 ¶ 37). Hinchliffe contends, however, that Costco management permitted him to record time in the Exception Log as a matter of course, even when he was otherwise able to punch in and out on the time clock. (Doc. 115 ¶¶ 34, 50, 57). Costco avers that its general timekeeping policy requires employees to enter all time on a daily basis, and that employees who cannot return to the warehouse at the end of their shift are required to call and report their hours to a senior manager that same day. (Doc. 113 ¶¶ 45–46). Additionally, all employees are required to accurately record their actual hours worked, including the actual time-started and time-ended, in the Exception Log. (Doc. 113 ¶ 38). Employees receive a draft timesheet at the end of each two-week pay cycle, and are obligated to report any inaccuracies. *Id.* ¶ 53. Hinchliffe disputes that these three requirements—recording actual times worked, doing so on a daily basis, and reporting timesheet inaccuracies—applied to him, at least during the time he performed comparative shopper duties. (Doc. 116 ¶¶ 38–58).

Finally, Costco does not generally permit hourly employees to take breaks that are longer than two hours but shorter than eight hours. When that does occur, the employee is entitled to overtime pay for the hours worked following his or her break, even if the total time worked does not exceed eight hours. (Doc. 115–4, Wight Dep. 59:1–60:6).

### C. Hinchliffe's Timekeeping Practices

During his time as a comparative shopper Hinchliffe had a regular assigned schedule of 8 hours per day, 5 days per week, for a total of 40 hours. However, Hinchliffe claims that Wight and Wallace permitted him to work an "open schedule," which he maintained until becoming a full-time outside marketer in 2004. Notwithstanding the specific times Hinchliffe was assigned to work, this open schedule allowed him to work whenever he wanted during the day, so long as he worked a total of 40 hours per week. Hinchliffe also claims that, for payroll purposes, management instructed him to record that he worked from 7 a.m. until 3:30 p.m. everyday, regardless of whether he actually worked those specific hours.

Since Hinchliffe was working irregular hours over the course of a week, he routinely recorded his time manually in the Exception Log, rather than punching in and out using the time clock. He claims to have assiduously kept track of his hours by writing them down on paper he took with him while comparative shopping, and which he later submitted to Costco. (Doc. 96–2, Hinchliffe Dep. 288:14–289:10). Hinchliffe does not dispute that his time entries in the Exception Log were technically inaccurate, but claims that he dutifully followed management's instructions, and that, one way or another, he always worked 40 hours per week unless he indicated otherwise. *Id.* at 269:2–271:2.

Costco, Wight, and Wallace all deny that Hinchliffe had permission to work an open schedule, and claim that Costco's timekeeping policies applied equally to Hinchliffe as they did to all hourly employees. (Docs. 112–19; 112–20; 113 ¶¶ 49–50). Specifically, Wight testified that he explained to Hinchliffe that if he was unable to use the time clock on a given occasion he was required to enter his actual hours worked on the Exception Log and have the entry approved by a manager. (Doc. 113 ¶ 49). Also, Wallace claims to have told Hinchliffe that rather than using the Exception Log on a consistent basis, he should be punching in and out on the time

clock "like any other employee." (Doc. 113 ¶ 50). Both supervisors deny giving either express or tacit consent for Hinchliffe to work hours in conflict with his assigned schedule and recorded time sheets. (Doc. 113 ¶¶ 12–15).

### D. After–Acquired Evidence of Hinchliffe's Inaccurate Timekeeping in 2002 and 2003

Following Hinchliffe's April 2006 termination, and by means of discovery during Hinchliffe's present breach of contract action, Costco obtained court records and other objective evidence demonstrating that Hinchliffe could not have worked the hours he submitted to payroll on at least 11 occasions in 2002 and 2003, when Hinchliffe was a comparative shopper. (Doc. 113 ¶ 101). Instead, the evidence shows that Hinchliffe was either incarcerated, being arrested, or appearing in court during the hours in which his submitted time sheets say he was working. (Doc. 114 at 7).

Hinchliffe does not contest the authenticity of this evidence, and concedes that it conclusively proves the inaccuracy of at least some of his submitted timesheets. (Doc. 116 ¶¶ 101–132). However, Hinchliffe claims that his participation in the criminal justice system was not inconsistent with the "open schedule" approved by his supervisors, Wight and Wallace. According to Hinchliffe, when he appeared in court during his scheduled work hours he would later "make up" the missed time by working on the weekend or late at night. He would nonetheless record his hours as 7 a.m. to 3:30 p.m. (with a 30 minute lunch break), because that is what management instructed him to do. (Doc. 96–2, Hinchliffe Dep. 270:19–24; 289:17–21).

## II. PROCEDURAL BACKGROUND

Hinchliffe filed a civil complaint on April 25, 2006, alleging that Costco breached its Employee Agreement, and illegally retaliated against Hinchliffe for filing a worker's compensation claim, when it terminated his employment in April 2006. Costco answered that it terminated Hinchliffe for a series of timekeeping violations in 2005 and 2006.

On June 18, 2008, the Court granted summary judgment in favor of Costco on Hinchliffe's retaliation claim, but set his contract claims for trial. (Doc. 74). A jury trial was scheduled for October 7, 2008, but after further discovery, including a second deposition of Hinchliffe in November 2008, Costco filed a Second Motion for Summary Judgment on December 8, 2008. (Doc. 87). The Court denied this motion on April 7, 2009, and ordered Hinchliffe to depose Dan Wight and Billy Wallace in preparation for trial. (Doc. 103). With the depositions of Wight and Wallace completed, Costco filed the present Motion for Summary Judgment on June 8, 2009 under a Court-approved briefing schedule. (Doc. 110).

## III. STANDARD OF REVIEW

■ Summary judgment should be granted when the record shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also City of Burlington v. Hartford Steam Boiler Inspection and Ins. Co.*, 190 F.Supp.2d 663, 669 (D.Vt.2002). To decide such a motion, the trial court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party and decide whether a rational juror could decide in favor of that party under applicable law. *Id.*; *Scott v. Harris*, 550 U.S. 372, 378, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007). However, all "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the

jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir.1996).

■ To defeat summary judgment, the opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, "there must be evidence on which the jury could reasonably find for the plaintiff." *Jeffreys v. City of New York*, 426 F.3d 549, 553–554 (2d Cir.2005) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Though the Court must accept all of Hinchliffe's allegations as true and draw all reasonable inferences in his favor, "conclusory statements, conjecture, or speculation ... will not defeat summary judgment." *Kulak v. City of New York*, 88 F.3d 63, 71 (2d Cir.1996) (internal citation omitted).

## IV. DISCUSSION

### A. Costco's After–Acquired Evidence Defense

The argument that Costco makes in this, its Third Motion for Summary Judgment, is precisely the same as the argument it raised in its Second Motion for Summary Judgment. Costco argues that Hinchliffe may not bring a breach of contract claim against Costco for his 2006 termination, because after-acquired information— namely, the court records from 2002 and 2003—show that he breached the contract first, and would have been terminated earlier had Costco known of the initial breach. (Doc. 114 at 17). Put differently, because it is now known that Hinchliffe falsified his time records in violation of the Employee Agreement in 2002 and 2003, and thus would have been terminated at that time, he cannot now recover damages for an alleged breach by Costco in 2006.

Costco relies on the "after-acquired evidence doctrine" for legal support, and the Employee Agreement's prohibition on falsification of time cards as proof that Hinchliffe breached the Employee Agreement. *Id.* at 10.

■ Although no Vermont court has ever adopted the after-acquired evidence doctrine, the Vermont Supreme Court has stated the rule without relying on it: "[A]n employer may not be held liable for breach of an employment contract, if it can show that it had the power to void the contract due to reliance on material misrepresentations, even where the employer was unaware of that power when the breach occurred." *Sarvis v. Vermont State Colleges*, 172 Vt. 76, 85, 772 A.2d 494 (2001) (quoting *Massey v. Trump's Castle Hotel & Casino*, 828 F.Supp. 314, 325 (D.N.J.1993)).

Of course, Hinchliffe responds that his supervisors gave him an open schedule, and that he never violated the Employee Agreement in 2002 and 2003 because he always worked a total of 40 hours every week. Even assuming his conduct violated a written Costco policy, Hinchliffe says, management knew of his timekeeping practices at the time, and Costco cannot turn around now and characterize them as a terminable offense. (Doc. 115 at 7–10); *see also O'Day v. McDonnell Douglas Helicopter Co.*, 191 Ariz. 535, 959 P.2d 792, 796 (1998) ("Of course, if the employee can demonstrate that the employer knew of the misconduct and chose to ignore it, then he will defeat the employer's attempted use of the after-acquired evidence and defense of legal excuse."). Although Costco denies that the open schedule ever existed, Hinchliffe argues that this purely factual dispute is one for a jury to decide.

■ But Costco counters once again: the Court cannot consider Hinchliffe's sto-

ry of an open schedule (or his second deposition in which it came), because it directly contradicts Hinchliffe's first deposition in which he claimed to have always recorded his time accurately. (Doc. 114 at 13). Costco cites well-settled Second Circuit law that "a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony." *Trans–Orient Marine Corp. v. Star Trading & Marine, Inc.,* 925 F.2d 566, 572 (2d Cir.1991). As Costco puts it, there can be no *genuine* dispute of fact when "the only 'dispute' in this case is between Hinchliffe's testimony at his *first* deposition, . . . and his testimony at his *second* deposition, where he was confronted with the conflict between his time records and various Court and police records[.]" (Doc. 119 at 3). If the Court ignores Hinchliffe's second deposition along with his "open schedule" explanation of his 2002 and 2003 time records, then there would be no competing stories for a jury to resolve.

Importantly, although Hinchliffe concedes that he never informed Costco of his involvement with the criminal justice system (Doc. 116 ¶¶ 134–138; Doc. 112–2, Hinchliffe Dep. 419:25–420:2, Nov. 5, 2008), Costco never argues that it would have or could have fired him *because* of his legal problems. Rather, it argues only that Hinchliffe would have been terminated because, as the court records show, he was not working the hours reported on his time sheets. (Doc. 114 at 9, 19–21). Costco does point out that Hinchliffe never asked for permission to attend court, but only to conclude that he falsified time when he went, not that the nature of his court involvement was itself a terminable offense. (Doc. 114 at 20).

Thus the entirety of Costco's argument rests on this: if Hinchliffe's account of a management-approved open schedule is properly in evidence, then summary judgment should be denied, and a jury must decide if Hinchliffe is telling the truth.

### i. Hinchliffe's Second Deposition Will Not Be Excluded

█ The first problem—and it is fatal all on its own—is that the Court already decided that Hinchliffe's depositions are not sufficiently contradictory to completely discredit his second deposition. This decision must be treated as law of the case. (Doc. 103); *Johnson v. Holder,* 564 F.3d 95, 99 (2d Cir.2009). The only difference between this and the immediately preceding Motion for Summary Judgment is that the depositions of Wight and Wallace are now in the record. But Hinchliffe's testimony is no more and no less self-contradictory than it was the first time the Court considered the issue. Because no "cogent or compelling" reason exists to abandon the initial decision, it remains intact, and Hinchliffe's testimony creates an issue of material fact. *See United States v. Quintieri,* 306 F.3d 1217, 1225 (2d Cir.2002).

█ Second, the Court's first decision was correct on the merits, and Hinchliffe's testimony properly creates an issue of disputed fact. Costco is correct that "a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Perma Research & Dev. Co. v. Singer Co.,* 410 F.2d 572, 578 (2d Cir.1969). But even assuming this rule would preclude consideration of a contradictory deposition—as opposed to an affidavit [3]—it does not apply where the

---

**3.** In *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 n. 2 (2d Cir.1996), the

Second Circuit declined to decide whether "a district judge ever may exclude deposition

subsequent testimony is only "arguably contradictory," or is merely a more specific explication of issues only generally addressed initially. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 619–620 (2d Cir.1996); *see also Langman Fabrics v. Graff Californiawear, Inc.,* 160 F.3d 106, 112 (2d Cir.1998) ("If there is a plausible explanation for discrepancies in a party's testimony, the court considering a summary judgment motion should not disregard the later testimony because of an earlier account that was ambiguous, confusing, or simply incomplete.").

■ In this case, there are plausible explanations for the discrepancies in Hinchliffe's testimony that should be evaluated by a jury.

As an initial matter, because Costco did not yet have his 2002 and 2003 court records, the particulars of Hinchliffe's alleged open schedule during that time were not thoroughly addressed in his first deposition. *See Adel v. Greensprings of Vermont, Inc.,* 363 F.Supp.2d 683, 690–691 (D.Vt.2005) (explaining that subsequent testimony will not be excluded "where the later sworn assertion addresses an issue that was not, or was not thoroughly or clearly, explored in the [first] deposition.") (internal quotation marks omitted). Nonetheless, Hinchliffe did allude to an open schedule authorized by Dan Wight in his first deposition:

Q: How do you know that [Dan Wight] knew you were going home to work?

A: Because he told me that I could do it . . . . he basically said to me he doesn't care how many hours, if I wanted to work 4 hours and then work another 4 hours later on, as long as I got my 8 hours in. . . . If I wanted to go later at

night, because it's easier at some places, I could do that. He approached me and talked to me about that.

* * *

Q: When you [went off the clock in the middle of the day], did you complete the exception log in a way that would show that you took a break in the middle of that 8 hours?

A: I don't remember, to tell you the truth. I did what my manager asked me to do and how he asked me to do it.

(Doc. 112–2, Hinchliffe Dep. 100:15–25; 104:22–105:2, June 27, 2007). Costco now complains that this account of working any 8 hours in one day contradicts his current story of working any 40 hours in one week. But Hinchliffe was not specifically asked about this distinction, and it's plausible that he was merely giving an example of how the open schedule worked, not definitively stating its rules. *See Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir.1996) ("a material issue of fact may be revealed by his subsequent sworn testimony that amplifies or explains, but does not merely contradict, his prior testimony . . . *especially where the party was not previously asked sufficiently precise questions to elicit the amplification or explanation.*") (emphasis added).

Next, Costco says that Hinchliffe's initial testimony that "the only reason [he] would take a break [during the workday] is because [his] back was bothering [him] or [he] was getting a headache or something like that," (Doc. 112–2, Hinchliffe Dep. 105:11–28, June 27, 2007), is inconsistent with the present assertion that he took breaks to attend court proceedings. But when Costco specifically asked Hinchliffe if he ever attended court hearings during normal work hours, he said, "No, the best

---

testimony when the testimony contradicts earlier sworn testimony," and explained that contradictory affidavits are particularly sus-

pect because they are generally written by lawyers, not the affiant, and are not subject to cross examination.

I can remember on that one." *Id.* at 105:23–106:6. It is at least plausible, even if not likely, that Hinchliffe forgot that he attended court hearings during workdays, remembering only when Costco showed him specific court records at his second deposition.

Costco also relies heavily on Hinchliffe's initial statement that he never wrote time on the Exception Log that was not the actual time he was working: "No, definitely not." (Doc. 119 at 2). But Costco's invocation of this testimony is misleading. When read in context, it is clear that Hinchliffe is testifying only about his time as an outside marketer, not a comparative shopper. (Doc. 112–2, Hinchliffe Dep. 218:18–219:11, June 27, 2007). This distinction is important because Hinchliffe apparently does not allege that he had an open schedule after Alex Coumans made him a full-time outside marketer in 2004. (Doc. 115–2, Hinchliffe Dep. 275:23–276:7, Nov. 5, 2008); (Doc. 116 ¶ 40).

Finally, Costco argues that Hinchliffe cannot now say that Wight told him to enter time inaccurately into the Exception log, because at his first deposition Hinchliffe denied having any conversation with a manager about the Exception Log:

Q: Are you telling us that you had a conversation about the exception log with a manager at Costco during the time you were a comp shopper?

A: I've never had a conversation about my time in the sense of the exception log at the time of writing in or nothing like that. I've never been talked to about nothing.

*Id.* at 105:3–105:10. Obviously, the problem here is that Hinchliffe's response is incomprehensible, and consequently does not directly contradict later testimony. One could reasonably infer from Hinchliffe's incoherent and disjointed response that he completely misunderstood the question, or perhaps he meant only that he never had a *disciplinary* conversation about the Exception Log. Costco could have resolved the ambiguity with further questioning, but chose not to. In any case, "[d]ecisions ... as to which of competing inferences to draw are entirely within the province of the trier of fact," not the Court. *Palazzo ex rel. Delmage v. Corio,* 232 F.3d 38, 44 (2d Cir.2000).

Thus, although there is some conflict between the two depositions, the Court does not find the "contradiction to be so stark as to warrant excluding the" second deposition. *Adel,* 363 F.Supp.2d at 691. Accordingly, even if the after-acquired evidence doctrine applies under Vermont law (an issue the Court does not presently reach), there remain disputes of material fact that only a jury may decide.

### ii. Hinchliffe's Evidence Is Sufficient To Defeat Summary Judgment

As explained already, it is odd that Costco once again premised its argument on the contradictions within Hinchliffe's own testimony, because the depositions of Wight and Wallace are the only new evidence on which it may rely. Obviously, the statements of other people have no relevance to whether Hinchliffe contradicts *himself.* But since both Wight and Wallace unambiguously denied Hinchliffe's allegations of an open schedule (Doc. 115 at 6), Costco could now argue that the evidence is so overwhelmingly in its favor that no "fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Jeffreys,* 426 F.3d at 553 (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505); *see also Kulak,* 88 F.3d at 71 ("A court must determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.") (internal quotation marks omitted).

There is no doubt that Hinchliffe has failed to marshal particularly compelling evidence. His own arguably inconsistent testimony is the only evidence he has to show that he submitted inaccurate time cards with the consent of Costco management. Conversely, Costco has the testimony of Hinchliffe's supervisors, as well as Costco's written timekeeping policies that clearly do not sanction the kind of unaccountable "open schedule" that Hinchliffe alleges here.

But at the summary judgment phase, the Court is to wade only reluctantly into the waters of evidentiary weight and witness credibility. *United States v. Rem*, 38 F.3d 634, 644 (2d Cir.1994). Other courts have done so when "[n]o reasonable person would undertake the suspension of disbelief necessary to give credit to [the plaintiff's] allegations." *Law Offices of Curtis V. Trinko, LLP v. Verizon Commc'n, Inc.*, 2006 WL 2792690, *8 (S.D.N.Y. Sept. 27, 2006) (Not Reported) (internal citations omitted). Such would be the case here, for example, if Hinchliffe now claimed that he actually went to work when all of Costco's documentary evidence says he was in court.

But there is no documentary evidence that specifically refutes Hinchliffe's claim that he had an open schedule, and that he was free to attend court (or do whatever else) during the workday, so long as he made up the missed hours later in the same week. There is evidence that such schedules were not in accord with Costco's general policies, but that does not sufficiently prove that Hinchliffe's supervisors did not make an exception to those policies and grant him an open schedule. Instead, there is a conflict of witness testimony in the record that only a jury can properly resolve.

Costco thinks it is significant that Hinchliffe has no specific proof—not even his own testimony—that he in fact "made up" all of the work hours he missed while appearing in court. (Doc. 114 at 16; Doc. 119 at 7). But to defeat a claim of after-acquired evidence, this is not something Hinchliffe bears the burden to prove. If he can show that Costco either consented to or was aware of his inaccurate timesheets, then whether he in fact worked a full 40 hours per week is entirely beside the point. Assuming Costco's knowledge of the open schedule, Costco must have been satisfied that he successfully worked all of his hours because it did not terminate his employment until 2006, when Hinchliffe was no longer a comparative shopper. Costco's argument would make more sense if it now had after-acquired evidence that Hinchliffe failed to work a total of 40 hours per week (such as police records showing he spent entire weeks incarcerated), or if Hinchliffe now claimed that he was wrongfully denied pay for some of his late-night or weekend hours. Neither is the case here.

Finally, Hinchliffe offers a plausible motive to explain why his supervisors, in addition to granting him an open schedule, told him to nonetheless record his hours as 7 a.m. to 3:30 p.m. everyday. Because of Costco's policy that all hours worked after a break of more than two but less than eight hours result in overtime pay, Hinchliffe would have frequently been entitled to overtime had he recorded the actual hours that he worked. (Doc. 114 at 16). Thus, Hinchliffe argues, Costco management had a financial incentive to ensure that he reported regular workdays to payroll, even if his actual hours were more sporadic.

Ultimately, Hinchliffe offers more than mere "speculation," "conclusory allega-

tions,"[4] "conjecture," or "surmise." *See Jeffreys*, 426 F.3d at 553–554. Instead, he alleges facts of which he has personal, first-hand knowledge. His "open schedule" explanation is not a mere theory or guess as to what may have happened; according to Hinchliffe's testimony both he and his supervisors were aware of the arrangement throughout the relevant time. Accordingly, even assuming that Costco could use after-acquired evidence to fully defend itself, a jury would have to make determinations of fact and credibility before the defense could apply here.

## V. CONCLUSION

For the foregoing reasons, Costco's "Renewed Second Motion for Summary Judgment" (Doc. 111) is DENIED.

---

4. The Defendant's pleadings are littered with accusations of "conclusory allegations," but Costco is either ignoring the definition of the word "conclusory" or the fact that Hinchliffe's claims of an "open schedule" are based on his personal knowledge and conversations.