**In re Grievance of Richard Harrison**

[446 A.2d 366]

No. 474-79

Present: **Barney, C.J., Billings, Hill and Underwood, JJ., and Larrow, J. (Ret.), Specially Assigned**

Opinion Filed April 16, 1982

*Michael R. Zimmerman,* Montpelier, for Plaintiff.

*M. Jerome Diamond,* Attorney General, and *Bennett Evans Greene* and *J. Scott Cameron,* Assistant Attorneys General, Montpelier, for Defendant.

**Underwood, J.** The grievant, the only black employee at the Chittenden Community Correctional Center, was dismissed from his job on May 21, 1979. The stated grounds for dismissal were failure to report for duty and absence without leave. He appealed his dismissal directly to the Vermont Labor Relations Board (Board) pursuant to a special provision in the collective bargaining agreement between the State of Vermont and the Vermont State Employees Association.

In his appeal, he alleged that the grounds for dismissal stated by the Department of Corrections were a smoke screen and that the real reasons for his dismissal were his race and his union activities, particularly his active and successful pursuit of other grievances. Vermont statutes prohibit both racial discrimination, 3 V.S.A. § 961(6), and harassment of state employees who pursue grievances or engage in union activity, 3 V.S.A. § 961(1),(3). Such acts would also constitute violations of the collective bargaining agreement.

The grievant sought to have the Board declare that his employer had violated the statutes and the employment contract as to both discrimination and harassment, and that his dismissal violated the contract because it was without "just cause." He asked for job reinstatement, and appropriate back pay and benefits.

The Board appropriately limited itself to the following inquiry:

> [W]as the Grievant dismissed for just cause, absenteeism and insubordination, or was the discharge motivated by discrimination based on race and union activity.

The Board found insufficient evidence to support a finding that his discharge was motivated by union activity or pursuit of other grievances, but it did find that his dismissal resulted from racial discrimination, and awarded back pay for time the grievant was unemployed.

The State appeals on two principal grounds. First, it argues that the Board's musings never directly addressed the issue of "just cause," and failed to find it either present or absent. Since this was the only issue properly before the Board, the State argues that the award of back pay was erroneous absent a finding that no just cause existed for the dismissal. Secondly, the State argues that the grievant's chronic absenteeism and periodic outbursts ordinarily would be just cause for dismissal. Since this behavior was not reasonable under the circumstances, and not justifiable, the State contends that just cause did exist for dismissal.

Although the Board certified nine questions of law for appeal pursuant to V.R.A.P. 13(d), the principal and controlling issue is whether the grievant was dismissed for just cause in law, or whether his chronic misbehavior was reason-

able and justifiable in light of a racially inhospitable climate at his place of work. Our review convinces us that the Board strayed from its statutory role and failed to apply the appropriate standards to the issues properly before it. Accordingly, we reverse and remand.

## I.

Both the standards to be applied in determining whether just cause exists for the dismissal of a state employee and the Board's role in that determination have been clearly defined by this Court in the past. They should by now be beyond any misapprehension. The Board's failure to make a specific finding on the vital issue of just cause, however, and certain language in its opinion make it evident that the Board still misconstrues its function. *In re Gage,* 137 Vt. 16, 19, 398 A.2d 297, 299 (1979).

## A.

The Board's grievance jurisdiction here is predicated on grievant's expressed dissatisfaction with aspects of employment, *i.e.,* his dismissal, under the collective bargaining agreement, which requires that "just cause" exist for a dismissal. *In re Brooks,* 135 Vt. 563, 566, 382 A.2d 204, 206 (1977). 3 V.S.A. § 926 gives the Board jurisdiction to "hear and make final determination on the grievances of all employees who are eligible to appeal grievances to the board."

As a public administrative body, the Board has only such adjudicatory jurisdiction as is conferred on it by statute. *In re Brooks, supra,* 135 Vt. at 570, 382 A.2d at 208. We have explicitly delineated the limits of the grievance jurisdiction conferred upon it by statute:

> Its duty is to decide whether there was, in law, just cause for the action taken, not whether it agrees or disagrees with that action. It has power to police the exercise of discretion by the employer and to keep such actions within legal limits. But the Board is not given, by the statute or by the agreement, any authority to substitute its own judgment for that of the employer, exercised within the limits of law or contract.

*In re Gage, supra,* 137 Vt. at 19, 398 A.2d at 299.

Whatever its powers under some other jurisdictional basis, the Board does not sit as an arbitrator when hearing grievances, and it erred when it stated to the contrary. Nor, having concluded that the employer was insensitive to the grievant's situation, did it possess power to fashion remedies with an eye to their function as a "catalyst" or their usefulness as a "prophylactic measure" to influence the employer's future behavior.

The Board's jurisdiction was "limited solely to determining whether there was just cause for the dismissal of grievant under the collective bargaining agreement. If the Board properly finds a lack of just cause . . . its power . . . is limited to remedying the improper dismissal . . . ." *In re Brooks, supra,* 135 Vt. at 570, 382 A.2d at 209.

The remedy to be applied for such a contractual breach is governed by contract law, not the Board's views on appropriate principles of social behavior. "Generally, the proper remedy for improper dismissal is reinstatement with back pay and other emoluments from the date of the improper discharge less sums of money earned or that without excuse should have been earned since that date." *Id.*

## B.

The objective of a "just cause" clause in a collective bargaining agreement is to remove from the employer the right to fire employees arbitrarily. *Id.* at 568, 382 A.2d at 207. "Just cause means some substantial shortcoming detrimental to the employer's interests which the law and sound public opinion recognize as a good cause for dismissal. Instances of repeated conduct insufficient in themselves may accumulate so as to provide for just cause for dismissal." *In re Gage, supra,* 137 Vt. at 18, 398 A.2d at 298.

The ultimate criterion of just cause is whether the employer acted reasonably in discharging the employee because of misconduct. We hold that a discharge may be upheld as one for "cause" only if it meets two criteria of reasonableness: one that it is reasonable to discharge

employees because of certain conduct, and the other, that the employee had fair notice, express or fairly implied, that such conduct would be ground for discharge.

*In re Brooks, supra,* 135 Vt. at 568, 382 A.2d at 207–08 (citation omitted).

The record discloses beyond a doubt that the second of these stated criteria was met. The grievant was given repeated warnings that continued absence and misconduct would subject him to sanctions. Progressively severe sanctions were in fact imposed which ultimately resulted in his dismissal.

Correctional officers are hired to maintain order and security among persons imprisoned as punishment for often violent crimes. Ordinarily, as the Board recognized, an employer would be reasonable to dismiss an employee for the conduct involved here. The Board found that "continual unauthorized absences, abuse of sick and annual leave, and insubordination . . . [are] highly incompatible with the degree of reliability required of correctional officers."

In spite of this general truism, the Board found that the employer caused a portion of the grievant's misconduct by its "toleration of a racially hostile working atmosphere that came to be significantly responsible for the rapid deterioration of a once exemplary employee." More specifically, those who worked at the center were not prohibited from engaging in racial and ethnic humor.

The State and the grievant agree that for a period of time in the grievant's employment, such joking was engaged in and enjoyed by both the grievant and his colleagues. The State contends that the benevolent intent of the grievant's colleagues continued, and that only the grievant's subjective perception of the racial jibes changed. The grievant contends that though the words used remained the same, they came to be infected with a hostile intent which he found painful and humiliating. So painful, in fact, that by October 12, 1978, he felt compelled to visit the attorney general's office to file a complaint of racial discrimination based on the joking.

The Board agreed with the grievant. It did not find that the employer was motivated by racial animus but rather that "the Employer's insensitivity to the experience of being black

in this country was so great that a climate of hostility existed which made working painful and deeply disturbing to the Grievant, a situation ultimately causing him to absent himself from work until conditions could be improved."

## II.

■ We have had but few occasions to deal with racial discrimination. Federal appellate decisions, although not binding upon us, are instructive in dealing with the issue. *Green Mountain Power Corp.* v. *Commissioner of Labor & Industry,* 136 Vt. 15, 25, 383 A.2d 1046, 1051 (1978) ; see also *State* v. *Whitingham School Board,* 138 Vt. 15, 410 A.2d 996 (1979) (federal appellate decisions relied on to decide sex discrimination issue).

In *DeGrace* v. *Rumsfeld,* 614 F.2d 796 (1st Cir. 1980), a black fireman was the victim of derogatory racial remarks and the "silent treatment" from white co-workers. Most serious was his discovery of three anonymous notes, full of racial invective, demanding that he quit his job, and threatening: "If we end up having a fire, you'll be staying in it and getting a lot blacker." He testified that the notes caused him to become nervous, to feel ill, to experience fainting spells, and made him afraid to go to work. Eventually, as a result of repeated absences, he was dismissed.

■ ■ We believe that the criteria developed by the *De-Grace* court to analyze the black fireman's suit for back pay and reinstatement provide a proper balance for weighing the interests of the employee and the citizens of the State of Vermont in nondiscriminatory employment against the interests of the Department of Corrections and the citizens of Vermont in secure prison facilities. Adapting these four criteria to the present circumstances we hold that in order to excuse absenteeism which would otherwise constitute just cause for dismissal the grievant must show that:

> 1. The racially motivated misconduct of his fellow employees affected the grievant's mental or physical well-being, interfering with his ability to carry out his work-related duties, and this reaction by the grievant was not unreasonable;

2. The employer, who was aware, or in the exercise of reasonable care should have been aware, of the offensive misconduct and of the grievant's reasonably based reaction to it, failed to take reasonably feasible measures to deal with the situation;

3. But for this reasonably based reaction and the employer's culpable failure to take corrective action, the grievant would have reported for duty; and

4. The employee's failure to report for duty was reasonable under the circumstances, though it might otherwise constitute just cause for dismissal.

Since the Board's analysis is not structured in accordance with the standard we have adopted today, we must remand the case for appropriate findings.

*Reversed and remanded for findings consistent with this opinion.*