## In re Grievance of Glenn BOYDE

[687 A.2d 1258]

No. 95-644

October 10, 1996. Glenn Boyde, a correctional officer at the Chittenden Regional Correctional Facility, appeals a Labor Relations Board decision that his grievance of racial discrimination against the Department of Corrections was untimely. Boyde contends the Board mistakenly rejected his claim that the Department's allegedly discriminatory acts constituted a "continuing violation" which tolled the fifteen-day filing period. We hold that the record does not support the contention and, therefore, affirm.

The material facts are undisputed. In early September 1985, Boyde, an African-American and veteran correctional officer, as well as a shop steward for the Vermont State Employees' Association (VSEA), became involved as a steward in the case of a probationary officer, Sandi Raymond. Raymond had received a negative assessment from the superintendent of the Chittenden facility, John Murphy. Boyde sought out Murphy to discuss the matter, and there ensued a heated exchange which Raymond witnessed. The following day, Murphy approached Raymond to apologize for the incident, and according to Raymond, the following conversation occurred. Raymond asked the superintendent if there was tension between the union and management, and Murphy acknowledged that there was, stating that the tension derived mainly from Boyde's aversion to "authoritative figures." Murphy explained that this aversion was probably acquired when Boyde's father left his mother years earlier, that Boyde was a "criminal" who had spent nine days in jail and had "terrorized" Vermont communities on his motorcycle, and that he had forced his wife to lie to state troopers. Murphy recounted that the Department had dismissed Boyde for his earlier offenses, but that the discipline had been reduced, leaving him with a feeling of "invincibility." Murphy concluded that Boyde had a "dark heart."

Raymond later reported to Boyde the substance of her conversation with Murphy. She testified unequivocally that

Boyde "knew everything" concerning the conversation by October 10. On November 10, thirty-one calendar days and twenty-three work days later, Boyde filed a grievance against Murphy and the Department alleging discrimination based on membership in the VSEA, the filing of prior complaints and grievances, and race. Murphy's statements to Raymond formed the sole predicate of the grievance.

Under the collective bargaining contract, a grievance is required to be made within fifteen working days of the underlying incident. Boyde's grievance was twice denied as untimely at preliminary steps in the grievance process, after which Boyde filed a grievance with the Labor Board. Following a hearing, the Board found that Boyde "reasonably became aware of the occurrence of the matter which gave rise to the grievance . . . by October 10." The Board therefore concluded that the grievance, filed on November 10, was untimely under the contractual provision requiring that grievances be submitted "within fifteen (15) workdays of the date upon which the employee could reasonably have been aware of the occurrence of the matter" giving rise to the complaint or grievance. The Board rejected Boyde's assertion that the grievance should be treated as timely because it was part of a "continuing" policy or pattern of discrimination, as evidenced by his contemporaneous involuntary transfer from the Women's Unit of the Chittenden facility, a transfer that occurred in early October and remained in effect through the November 10 filing. The Board ruled that the argument lacked merit for two reasons: first, because the grievance as filed contained no reference to the ban from the Women's Unit as supportive of the discrimination claim; and also because the Board had previously recognized the validity of a "continuing" violation only in cases where pay practices were involved. Accordingly,

the Board granted the State's motion to dismiss.[1]

Boyde contends the Board's reasoning was erroneous in both respects. Any factual omission from the grievance was cured, he asserts, when he raised the job reassignment without objection at the hearing on the State's motion to dismiss. He also contends there is ample authority to support application of federal anti-discrimination law, including the continuing violation doctrine, to Vermont cases. See, e.g., *Allen v. Department of Employment & Training*, 159 Vt. 286, 289-90, 618 A.2d 1317, 1319 (1992); *In re Harrison*, 141 Vt. 215, 222, 446 A.2d 366, 369 (1982). We need not resolve either of these claims. For even assuming their merit, the record amply supports the State's position that Boyde failed to satisfy the evidentiary prerequisites of a continuing violation.

A judicially developed equitable exception to the timely filing requirements of Title VII, 42 U.S.C. § 2000e-5(e), the continuing violation doctrine allows an employee to pursue a claim "for discriminatory conduct that began prior to the filing period if [the employee] can demonstrate that the act is part of an ongoing practice or pattern of discrimination of

---

[1] Boyde raised an alternative theory of timeliness with the Board which he has apparently abandoned on appeal. He asserted that the filing period should have commenced on October 12, when Raymond memorialized her recollection of the Murphy conversation in a memorandum to Boyde, and that the grievance should have been deemed filed on November 2 (exactly fifteen days later) when Boyde's union representative sent a letter of complaint to the Corrections Commissioner. The Board rejected the argument, finding, as noted, that Boyde became reasonably aware of the basis of the grievance on October 10, and further that the letter of November 2 did not qualify as a complaint or grievance within the meaning of the employment contract.

the defendant." *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir. 1995). To rely on the theory, "the plaintiff must do two things. First, he must demonstrate that at least one act occurred within the filing period . . . . Next, the plaintiff must establish that the harassment is 'more than the occurrence of isolated or sporadic acts of intentional discrimination.'" *Id.* at 754-55 (quoting *Jewett v. International Tel. & Tel. Corp.*, 653 F.2d 89, 91 (3d Cir. 1981)). "[M]ultiple incidents of discrimination, even similar ones, that are not the result of a discriminatory policy or mechanism do not amount to a continuing violation." *Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir. 1993).

Viewed in the light of the foregoing principles, the flaws in Boyde's continuing violation claim are patent. Boyde hinges his claim upon a decision by the Department to temporarily suspend his work assignment to the Women's Unit pending an investigation of allegations of misconduct. Boyde produced no evidence, however, of any pattern or departmental policy of discrimination of which these incidents — the Murphy comments and the work reassignment — formed an integral part. At most, he alleged specific, unrelated instances of alleged discrimination which, standing alone, are insufficient to establish a continuing violation. Furthermore, to render his grievance timely Boyde must demonstrate that at least one related act occurred *within* the fifteen-working-day grievance period. *West*, 45 F.3d at 754-55. Boyde's reassignment took place on October 10, well before the fifteen-day filing period. He attempts to sidestep this problem by characterizing the reassignment as a "continuing act," since the reassignment remained in effect from October 10 until the end of November. It is well settled, however, that "[c]ompleted acts, such as termination through discharge or resignation, a job transfer, or discontinuance of a particular job assignment are not acts of a 'continuing' nature." *McPartland v. American Broadcasting Cos.*, 623 F. Supp. 1334, 1338 (S.D.N.Y. 1985) (citations omitted); see also *Bradley v. Consolidated Edison Co.*, 657 F. Supp. 197, 203 (S.D.N.Y. 1987). Thus, Boyde's reassignment constituted a completed act when it occurred on October 10; it fails, accordingly, to qualify as an act "within the filing period" for purposes of the continuing violation doctrine. *West*, 45 F.3d at 754.

Boyde's additional assertion that the filing period was tolled because the Department maintained a hostile work environment, see *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993), which itself represented a continuing violation, fails for the reasons discussed above. He cites no evidence to demonstrate either a pattern of discrimination or a series of acts "sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986) (quoting *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982)); see also *West*, 45 F.3d at 755 ("Hostile work environment and continuing violation claims have similar requirements of frequency or pervasiveness."). The evidence is insufficient to establish a continuing violation that would render the grievance timely.[2]

*Affirmed.*

---

[2] Two days before oral argument, the State moved to dismiss the appeal as moot on the ground that Boyde had been permanently reassigned to a different facility and therefore that no actual controversy existed between the parties. "'A case is moot if the reviewing court can no longer grant effective relief.'" *In re Moriarty*, 156 Vt. 160, 163, 588 A.2d 1063, 1064 (1991) (quoting *Sandidge v. Washington*, 813 F.2d 1025, 1025 (9th Cir. 1987)). Unlike in *Moriarty*, where the grievant had left state service, here

---

Boyde remains employed by the same Department which allegedly condoned Murphy's discriminatory acts and from which he seeks remedial action. Therefore, the motion to dismiss is denied.