Filed 02/12/24

**STATE OF VERMONT**

**SUPERIOR COURT**                              **CIVIL DIVISION**
**Rutland Unit**                                 **Docket No. 21-CV-2629**

**SEAN DOWLING,**
     **Plaintiff**

**v.**

**THE STATE OF VERMONT,**
     **Defendant**

**Decision: Defendant's Motion for Summary Judgment (Motion # 6)**

Plaintiff was employed by the Department of Labor of the State of Vermont from 2015 until he was discharged in March of 2021. He has had Tourette's syndrome since birth such that he has tics that he cannot control. One of them causes him to reach for his groin with his hand periodically. He asserts two claims against the State of Vermont under the Vermont Fair Employment Practices Act (FEPA) based on conduct of the Department of Labor toward him as a person with a disability: hostile work environment, and disability discrimination.

Defendant State of Vermont seeks summary judgment. Nearly all of the facts set forth in Defendant's Statement of Undisputed Material Facts are not disputed by Plaintiff. However, Plaintiff filed a Statement of Additional Material Facts. Defendant objects to many of those in the manner described below.

Defendant argues that Plaintiff's allegations are not sufficient to show either claim. The court has reviewed and compared all of the statements of fact and responses to determine whether there is a lack of evidence on any of the essential elements of either claim and/or whether there are material facts that are in dispute.

*Alleged facts and issues*

Allegations of facts as set forth in the parties' Statements are described here to show the context of the legal analysis below. The court itself is making no findings of fact.

Mr. Dowling was hired for a supervisory position in the Rutland office of the Department of Labor in early 2015. When he was hired, morale in the office had been low for some time. From the time he began working, some staff members reported that Mr. Dowling touching his groin made them uncomfortable. An employee quit in March of 2016 after three months, and told her superiors that she was leaving because of the hostile work environment against Mr. Dowling because of his disability. Supervisors, including the Commissioner, wanted her to stay, and said that action would be taken. Plaintiff alleges that there was no action from the central office.

1

In January or February of 2018, when Mr. Dowling asked an employee to cover a desk, she mimicked his tic and said, "I just can't deal with you and this." In 2018, an employee named Ms. Bearss complained that Mr. Dowling played with himself. In July, Ms. Bearss told a supervisor that Mr. Dowling should not have his job if he has "that condition."

An incident occurred at a Christmas party on December 21, 2018 in which there was an interchange between Mr. Dowling and Ms. Bearss. There is contradictory testimony about what happened, but the incident appears to have had an impact on the dynamics of relationships within the office as they relate to attitudes toward Mr. Dowling. In December or January, Mr. Dowling overheard a demeaning comment related to his Tourette's syndrome made by Ms. Bearss when she was on the phone with an unknown person.

Allegations of misconduct were made by subordinate employees against Mr. Dowling, including bullying behavior, creating a hostile work environment, moonlighting on State time, and sharing confidential information. In early 2019 DHR investigators came to the office. Ms. Bearss spoke with the investigators about the allegations. Mr. Dowling was told not to retaliate against employees who participated in the investigation. By this time, Mr. Dowling was concerned that Ms. Bearss and another employee, Ms. Carmody, were spending unnecessary time talking together in a private office and reported this and other instances of alleged improper use of State work time. Superiors were concerned that Mr. Dowling may be retaliating.

In April of 2019, an employee named Ms. Wilder went to Mr. Dowling and apologized to him, telling him that there was a group effort to try to get rid of him that had started around Christmas time. She said that she had participated because she had been standing with her friend, but she no longer wanted to participate in it. She said that Ms. Bearss and Ms. Carmody meet 6-8 times a day during work hours to talk about Mr. Dowling's situation. She told an investigator that she wanted to retract prior statements she had made about him. Plaintiff claims that the Commissioner told staff to ignore reports Mr. Dowling made about staff misconduct.

At about this same time, Mr. Dowling, through his lawyer, complained to the Department of harassment of Mr. Dowling based on his disability. Also during this period, there were employee complaints that Mr. Dowling had retaliated against employees who had spoken with investigators. Ms. Bearss was interviewed. In April of 2019 Mr. Dowling was placed on administrative leave during an investigation into whether he had retaliated against employees.

In August of 2019, Mr. Dowling received a letter saying that discipline against him was contemplated based on misconduct and retaliation. A hearing was held in September. In November, DHR sent Mr. Dowling a letter stating that there would be an investigation into his claim of disability harassment. Interviews followed. In December, a conference call took place in which there was discussion about reassigning Mr. Dowling to jobs at other locations.

In July of 2020, the Commissioner determined that Mr. Dowling had committed intentional retaliatory conduct, and in October he was demoted to a non-supervisory position with reduced pay for engaging in retaliation and sharing confidential employee information. In November, the State began its investigation into his claim of discrimination. In December of 2020, he was reassigned to a position in the Middlebury office, and he received a letter from the

Commissioner stating that his claim of disability discrimination had not been substantiated. He did not report to work in the Middlebury office claiming that he did not believe that he would be treated fairly because the administration had disciplined him rather than stop the discrimination against him. On March 30, 2021, he was fired.

## Analysis

A party is entitled to summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56 (a). "The moving party has the burden of proof, and the opposing party must be given the benefit of all reasonable doubts and inferences in determining whether a genuine issue of material fact exists." *Price v. Leland,* 149 Vt 518, 521 (1988).

*Hostile work environment*

As the State notes in its Motion, proof of a hostile work environment claim requires a showing of "a pattern of discrimination or a series of acts 'sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *In re Boyde,* 165 Vt. 624, 626 (1996) (mem.)

Plaintiff has offered evidence that hostility against Mr. Dowling based on his disability took place in 2015-2016 sufficient to cause an employee who observed it to quit after three months specifically due to the hostile treatment of him, despite being encouraged by superiors to stay and their statement that action would be taken. There is sufficient evidence from which a jury could conclude that a pattern of hostility to Mr. Dowling attributable to his disability existed then and continued through 2018-2019 to such a degree that there was a "group effort" to get rid of him, later renounced by one participant. It may be inferred from this evidence, if believed by a jury, that the misconduct allegations against Mr. Dowling resulted from the "group effort."

Plaintiff's evidence, if found credible, carries reasonable inferences that Mr. Dowling was working in an environment in which the employees he supervised were engaged in a sustained hostile campaign against him because of his disability. Defendant responded to many of the Plaintiff's additional facts with the simple words "Immaterial," "Speculative, or "Inadmissible" without further explanation. The court cannot conclude by comparing those isolated words to the facts alleged and supporting citations in Plaintiff's Statement that Plaintiff lacks admissible evidence, or that Plaintiff's alleged facts are "speculative" as opposed to reflecting a witness's understanding of circumstances.

Review of all the allegations of fact by both parties shows that there are disputes of material fact that call for fact-finding. If the jury finds the facts as alleged and argued by Plaintiff, the standard set forth above of the elements of a hostile work environment will be met: a sustained pattern over a period of years of insubordination by employees because of Mr. Dowling's disability, strong enough to cause a group of them to lodge misconduct complaints against him in an effort to have him removed. Allegations include that Mr. Dowling's superiors in the Department knew about these circumstances and they did not take corrective measures.

Because material facts are disputed, summary judgment on this claim is denied.

*Disability discrimination*

Discrimination based on disability is unlawful under the Vermont Fair Employment Practices Act (FEPA). 21 V.S.A. § 495 (a). "FEPA is patterned on title VII of the Civil Rights Act of 1964, and the standards and burdens of proof under FEPA are identical to those under Title VII." *Hammond,* 2023 VT 31, ¶ 24 (citation omitted).

Defendant accurately sets forth in its motion the elements of a disability discrimination claim where evidence of discrimination is circumstantial. They are required by the three-part *McDonnell Douglas* framework. See *Robertson v. Mylan Laboratories, Inc.,* 2004 VT 15, ¶ 18. First, a prima facie case requires the plaintiff to show (1) he or she was a person with a disability, (2) the employer was notified of the disability, (3) he or she was otherwise qualified to perform the job, and (4) he or she suffered an adverse employment action because of the disability. *Hammond,* 2023 VT 31, ¶ 35. If the plaintiff establishes a prima facie case on these elements, a presumption of discrimination arises, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment decision. When this occurs, then the burden shifts back to the plaintiff to prove that the employer's justification was merely a pretext for discrimination. *Robertson,* ¶¶ 18, 26, 27.

Plaintiff's alleged adverse employment actions include a demotion with reduced pay as well as termination. Defendant argues that being placed on paid administrative leave during an investigation is not adverse employment action, although it is not clear whether Plaintiff is claiming that the administrative leave was an adverse employment action. Mr. Dowling was placed on paid administrative leave in April of 2019. The demotion was in July of 2020, and the termination occurred in March of 2021.

Defendant argues that both the demotion and termination were responses to his own misconduct, and not a product of discrimination. Such a position is premised on acceptance of the legitimacy of the Department's investigation determinations. While the investigation reports cited non-discriminatory reasons for disciplinary action, that does not mean that the conclusions in the reports are not subject to challenge. Mr. Dowling argues that the investigation results are part of the pattern of discrimination he experienced during his employment. If jurors find Plaintiff's evidence credible, they may or may not also infer that the Department's findings of misconduct and retaliation on the part of Mr. Dowling were actually part of a pattern of discriminatory conduct by the Department.

Defendant argues that even if the employees' initial complaints against Mr. Dowling were motivated by their own discriminatory intent, such intent cannot be imputed to the State to make it responsible for discrimination. Plaintiff argues in response that Mr. Dowling's employers knew as early as 2016 that its employees were engaged in unlawful discriminatory harassment, and did not take corrective action, but sided with the employees in their misconduct complaints against Mr. Dowling and minimized discrimination that was occurring.

There are disputes of fact about what actually happened at many points: the existence and/or extent of hostility and discrimination against Mr. Dowling beginning in 2015 and ongoing, the incident at the December 21, 2018 Christmas party, the legitimacy of the

employees' misconduct complaints against Mr. Dowling versus whether the complaints were made in an effort to get rid of him for discriminatory reasons, the validity of the findings of the misconduct and retaliation investigations and resulting adverse employment actions against Mr. Dowling, and the validity of the findings that his disability discrimination complaint was not substantiated.

As noted above, Defendant's response to many of Plaintiff's statements of fact was simply "immaterial," "inadmissible," or "speculative," without explanation. The court cannot adopt Defendant's unsupported and unexplained responses to Plaintiff's evidentiary allegations. There is a great deal of evidence from many witnesses about events that occurred over a period of years. Findings of fact will require determination of the credibility of each witness and consideration of each person's motivation and potential bias. In addition to sorting out which witnesses are credible, the jury will need to interpret circumstantial evidence to determine the facts and decide whether Plaintiff's evidence is sufficiently strong to meet its burdens, and possibly, in addition, whether Defendant's evidence of legitimate reasons for its adverse employment decisions is sufficiently strong to meet its burden.

Because there are disputes of material fact as to essential elements of the claim, Defendant has not shown grounds for summary judgment.

**Order**

For the reasons set forth above, Defendant's Motion for Summary Judgment is *denied.*

Pursuant to the Amended Pretrial Scheduling Order issued April 28, 2023, the case should be ready for trial, except that the record does not show whether mediation has been completed. The court will schedule this case for the next jury draw and related pretrial conference, but attorneys are advised that mediation is required to take place prior to jury draw.

By March 1, 2024, Plaintiff's counsel shall file a report on the status of mediation, including a scheduled date for mediation if it has not yet occurred.

Electronically signed February 12, 2024 pursuant to V.R.E.F. 9 (d).

Mary Miles Teachout
Superior Judge (Ret.), Specially Assigned

5