Filed 11/26/25

VERMONT SUPERIOR COURT
Bennington Unit
207 South St
Bennington VT 05201
802-447-2700
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 23-CV-01167

| Steve Perrin v. Windham Southeast Supervisory Union et al |
|---|

## ENTRY REGARDING MOTION

Title:          Motion for Summary Judgment  (Motion: 20)
Filer:          John H. Klesch
Filed Date:     October 05, 2025

Defendants Windham Southeast Supervisory Union, Windham Southeast School District Board, Kelly Young, individually and in her official capacity as Chair of the Windham Southeast School District Board, Anne Beekman, individually and in her capacity as Vice-Chair of the Windham Southeast School District Board, Tim Maciel, individually and in his official capacity as a member of the Windham Southeast School District Board, Liz Adams, individually and in her official capacity as a member of the Windham Southeast School District Board, Lana Dever, individually and in her official capacity as a member of the Windham Southeast Supervisory Union Board, Michelle Luetjen Green, individually and in her official capacity as a member of the Windham Southeast School District Board, Robin Morgan, individually and in her official capacity as a member of the Windham Southeast School District Board, Shaun Murphy, individually and in his official capacity as a member of the Windham Southeast School District Board, Emily Murphy Kaur, individually and in her official capacity as a member of the Windham Southeast Supervisory Union Board, and Deborah Stanford, individually and in her official capacity as a member of the Windham Southeast School District Board seek summary judgment pursuant to V.R.C.P. 56.

Plaintiff Steve Perrin opposes.

For the reasons that follow, the Rule 74 appeal is DENIED, and the motion for summary judgment is GRANTED.

**Procedural History**

Defendant Windham Southeast School District School Board ("Board") dismissed Steve Perrin from employment as principal of Brattleboro Union High School asserting just cause to terminate. Complaint ¶¶23, 38; see also February 20, 2023, 16 V.S.A. § 243(d) Decision at 2 ("Decision" filed with Court April 5, 2023). Perrin had been a long-term employee of the School District, becoming principal at Brattleboro Union High School in 2011. The dismissal occurred during the term of a two-year contract of employment. Id. at ¶ 23. Plaintiff appealed that decision

to the Board pursuant to 16 V.S.A. § 243(d), and, by written decision issued February 20, 2023, the Board affirmed the dismissal. Id. at ¶ 38; see also Decision at 25. Perrin then filed a notice of appeal with the Board for V.R.C.P. 74 review by the Superior Court. See March 14, 2023, Notice of Appeal, filed with Court March 23, 2023. Perrin filed this Complaint with the Court on March 21, 2023. The Complaint included six counts as follows: Count 1 Petition for review of governmental action pursuant to V.R.C.P. 74; Count 2 Breach of contract; Count 3 Wrongful termination[1]; Count 4 Denial of due process 42 U.S.C. § 1983; Count 5 Intentional infliction of emotional distress; and Count 6 Defamation.

### Standard of Review

A party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a). A fact is material "'if it might affect the outcome.'" *In re Estate of Fitzsimmons*, 2013 VT 95, ¶ 13, 195 Vt. 94 (quoting *N. Sec. Ins. Co. v. Rossitto,* 171 Vt. 580, 581, 762 A.2d 861, 863 (2000) (mem.)). "A dispute of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rodriguez v. Fill. Green Realty, Inc.*, 788 F.3d 31, 39–40 (2d Cir. 2015) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

"'Where the moving party does not bear the burden of persuasion at trial, it may satisfy its burden of production by showing the court that there is an absence of evidence in the record to support the nonmoving party's case. . .. The burden then shifts to the nonmoving party to persuade the court that there is a triable issue of fact.'" *Boulton v. CLD Consulting Eng'rs*, 175 Vt. 413, 417 (2003) (quoting *Ross v. Times Mirror, Inc.,* 164 Vt. 13, 18 (1995)). "'The nonmoving party may survive the motion if it responds with specific facts raising a triable issue, and it is able to demonstrate sufficient evidence to support a prima facie case.'" *State v. G.S. Blodgett Co.*, 163 Vt. 175, 180 (1995) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 324 (1986)).

The nonmoving party must do "more than simply show that there is some metaphysical doubt as to material facts." *Ryan v. Vt. State Police*, 667 F. Supp. 2d 378, 381 (D. Vt. 2009) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). "Summary judgment is mandated . . . where, after an adequate time for discovery, a party 'fails to make a showing sufficient to establish the existence of an element' essential to his case and on which he has the burden of proof at trial*." Poplaski v. Lamphere*, 152 Vt. 251, 254–55 (1989) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).

"If the nonmoving party fails to establish an essential element of its case on which it has the burden of proof at trial, the moving party is entitled to summary judgment as a matter of law." *Washington v. Pierce*, 2005 VT 125, ¶ 17, 179 Vt. 318 (quoting *G.S. Blodgett,* 163 Vt. at 180).

When considering motions for summary judgment, the nonmoving party is entitled to "all reasonable doubts and inferences." *West v. N. Branch Fire District #1*, 2021 VT 44, ¶ 13 (citing

---

[1] Count 3 was dismissed by entry order dated December 6, 2023.

*In re Miller Subdivision Final Plan*, 2008 VT 74, ¶ 8, 184 Vt. 188); *G.S. Blodgett*, 163 Vt. at 180.

**Rule 74 Appeal**

In Perrin's November 6, 2025, Memorandum in Opposition to Defendants' Motion for Summary Judgment ("Opposition Memorandum"), he remarks that "the Rule 74 review has not yet occurred in this matter." Defendants responded in their reply memorandum, "[t]hat review is occurring now." The court concurs that defendants' Motion for Summary Judgment has placed the Rule 74 before the court for resolution. The parties have briefed issues relevant to the appeal. The court will decide the appeal based on the record from below. There is no right to a jury as to the Rule 74 appeal since 16 V.S.A. § 243 does not confer a right to a jury trial in an appeal of a school board's decision to terminate a school principal.

Review under Rule 74 is on the record developed in the administrative hearing unless the statute clearly states otherwise. *Burch-Clay v. Taylor*, 2015 VT 110, ¶ 14 (citing *In re Kwon*, 2011 VT 26, ¶ 6). As here, *Burch-Clay* involved an appeal from a school board's decision to terminate a principal. The Vermont Supreme Court held that the applicable standard of review under Rule 74 is deferential, meaning that this court must uphold the Board's factual findings unless clearly erroneous and its conclusions of law if reasonably supported by the findings. Id. "Our review of matters not within the scope of the Board's expertise, including alleged due-process violations and other questions of law, is plenary. *Rodriguez v. Pallito*, 2014 VT 18, ¶ 20, 195 Vt. 612, 93 A.3d 102." Id. at ¶15.

Under 16 V.S.A. § 243(d), "a principal may be dismissed by the board for just and sufficient cause." Vermont courts reviewing such a dismissal apply a two-part test for determining whether there was just cause for dismissal: (1) whether the employee's conduct was egregious enough that the discharge was reasonable; and (2) whether the employee had fair notice, express or implied, that such conduct could result in discharge. *Burch-Clay*, 2015 VT 110, ¶ 45 (citing *Sarvis v. Vt. State Colls.*, 172 Vt. 76, 80 (2001)). "Knowledge that certain behavior is prohibited and subject to discipline is notice of the possibility of dismissal." Id. ¶ 47 (quoting *In re Grievance of Randy Hurlburt*, 2003 VT 2, ¶ 25, 175 Vt. 40.). The "ultimate criterion of just cause is whether the employer acted reasonably in discharging the employee because of misconduct." *In re Harrison*, 141 Vt. 215, 220-21, 446 A.2d 366, 368 (1982) (citation omitted).

This court must review the record to determine whether the Board's decision complies with this two-part test.

**Facts**

Perrin, was employed by Windham Southeast School District ("District") as the principal at Brattleboro Union High School (BUHS) from 2011 through November 14, 2022. Windham Southeast School District Board Decision, Feb. 20, 2023 (hereafter "Board Decision") at 4; see

also 16 V.S.A. § 243(d) hearing exhibit E (copy of Perrin's employment contract with the District).

In January 2022, following reports of staff misconduct, the Windham Southeast School District Board ("Board") retained an independent attorney, Aimee Goddard, to investigate complaints on its behalf. SUMF ¶ 2. As part of her investigation, Attorney Goddard received and investigated a complaint from former BUHS student Jane Doe alleging past misconduct by Perrin. SUMF ¶ 3.

Attorney Goddard also received and investigated a complaint from former BUHS school counselor Rhonda Winegarner. SUMF ¶ 4.

The District placed Perrin on administrative leave. SUMF ¶ 5.

Attorney Goddard interviewed Jane Doe, Rhonda Winegarner, and other witnesses, including Perrin, concerning the allegations regarding Plaintiff. SUMF ¶ 6. Attorney Goddard created investigative reports concerning the two investigations and provided them to the Board. SUMF ¶ 7. Based on the Goddard investigative reports, on September 30, 2022, the Board sent Perrin a letter outlining the allegations, informing him that the allegations may be grounds for termination, and inviting him to submit a written response. SUMF ¶ 8. Perrin submitted a written response along with letters of support. SUMF ¶ 9.

The Board decided to dismiss Perrin, notifying him of this decision by letter dated November 14, 2022. SUMF ¶ 10. The November 14 letter set forth the following three grounds for Perrin's termination:

a. Inappropriate and harmful investigation of an alleged sexual assault involving Jane Doe;
b. A pattern of harassment, abuse, and unprofessional conduct towards Jane Doe during the 2009-10 school year and continuing through 2012 when she graduated; and
c. Instructing at least one employee under Perrin's authority not to make a report under 33 V.S.A. § 4911 et seq. when she and another employee believed in their professional capacities that a mandatory report was required. SUMF ¶ 11.

Perrin timely appealed the dismissal pursuant to 16 V.S.A. § 243(d), which statute requires a quasi-judicial hearing of a school board to review a decision to terminate a principal. SUMF ¶ 12.

The Board issued a December 16, 2022 Pre-Hearing Order, which ordered the District to provide unredacted copies of the two investigation reports to Perrin, subject to conditions. SUMF ¶ 13. The Pre-Hearing Order also set dates for submission of witness and evidence lists, pre-hearing objections, and scheduled the hearing with an opportunity to submit pre-hearing memoranda of law. Id. Neither party submitted a memorandum of law. Id.

The Board issued a Second Pre-Hearing Order on January 6, 2023, resolving certain objections involving proposed witness testimony. SUMF ¶ 14.

The Board held a hearing over the course of six different sessions from January 9, 2023 through January 26, 2023, lasting more than twenty hours in total. SUMF ¶ 15. Perrin was represented by counsel in pre-hearing matters and throughout the hearing. Id. At the hearing, the parties presented witnesses who testified under oath, subject to cross examination and objection. SUMF ¶ 16. The Board also admitted several exhibits. Id.

Jane Doe was a student at Brattleboro Union High School between 2008 and 2012. During her sophomore year when Perrin was assistant principal. Perrin interviewed Doe about a sexual assault that had occurred off campus. Perrin conducted most of the interview alone behind closed doors in his office. Perrin did not immediately notify Doe's parents of the interview despite her request that he do so. Perrin persisted in questioning her despite her reluctance to answer and threatened her with an accusation of filing a false report. Following that interview, Perrin had several uncomfortable interactions with Doe throughout her remaining time as a BUHS student. On these occasions, Perrin would call Doe to his office, make her wait outside his office, and then interview her alone "without specific rhyme or reason". Perrin told her "that he kept me out there on the chairs for a while so that everyone walking by could see what a bad girl I was." On other occasions, Perrin would walk Doe between classes. Perrin made uncomfortable and unwelcome remarks to Doe about her appearance. Perrin touched Doe's hair on one occasion. Perrin took a sexual interest in Doe, and "developed a very inappropriate fixation with [Doe]." Hearing Transcript, January 9, 2023, pp. 24-102.

Rhonda Winegarner was a District employee working as a counselor at the time of events relevant to this matter and a mandatory reporter. Perrin instructed her not to make a report to DCF about an incident she felt required to report. After insisting the matter be reported, it was. Hearing Transcript, January 12, 2023, pp. 72-111.

Gina Onorato was a District employee working as the director of counselors at all times relevant. Perrin directed Winegarner not to report an incident. After further discussion, a report was made. Hearing Transcript, January 12, 2023, pp. 112-131.

Nicole Zolnoski was a District employee working as administrative assistant. Zolnoski confirmed that Doe met with Perrin in his office and had waited outside his office. Hearing Transcript, January 16, 2023, pp. 81-109.

The Board issued a written decision on February 20, 2023 (the Board Decision). The Board concluded that Perrin had received pre- and post-termination due process, and noted that Perrin did not challenge the Board's ability to impartially consider his termination, including that he did not request recusal of any Board members. SUMF ¶ 18. The Board further concluded, as a matter of law, that the Board had exclusive authority to terminate Perrin, with or without a recommendation from the Superintendent. SUMF ¶ 19. Lastly, with respect to due process, the Board concluded that Perrin received adequate due process by virtue of the September 30, 2022

pre-termination letter, an opportunity to respond, and the November 14, 2022 termination letter. SUMF ¶ 20.

The Board determined that it was more likely than not that Perrin had conducted an inappropriate and harmful investigation of Jane Doe's sexual assault, and that such conduct was egregious enough to support dismissal. SUMF ¶ 21. The Board also concluded that Perrin had fair notice that such conduct could result in discharge.

The Board further concluded that it was more likely than not that Perrin engaged in a pattern of harassment, abuse, and unprofessional conduct towards Jane Doe, and that such conduct supported termination. SUMF ¶ 23.

Lastly, the Board concluded that it was more likely than not that Perrin had instructed his staff not to make a mandatory report to State agencies, and that such conduct was egregious enough to support dismissal. SUMF ¶ 24.

A review of the testimony and evidence received into the record in the 16 V.S.A. § 243(d) hearing's six sessions finds clear support for each of the Board's conclusions. Perrin's dismissal was supported by three independent bases establishing just and sufficient cause. SUMF ¶ 26.

Perrin submitted a Rule 74 Notice of Appeal to the District on March 14, 2024, which was transmitted to the Court along with the record on appeal. Perrin also filed a March 21, 2023, Complaint with the Court. In his Complaint, Perrin has sued the Windham Southeast Supervisory Union, the District, and the ten individuals serving as members of the Board at the time of his termination, naming them in official and individual capacities. Complaint ¶¶ 2–13. In addition to presenting his Rule 74 Petition for Review of Government Action as Count 1 of his Complaint, he has pleaded claims for (2) Breach of Contract; (3) Wrongful Termination (dismissed by Court on December 6, 2023); (4) Denial of Due Process; (5) Intentional Infliction of Emotional Distress; and (6) Defamation.

**Analysis**

After notifying Perrin that it was contemplating termination, the Board heard his timely appeal, holding six sessions. Perrin was represented by counsel at all times relevant to these proceedings. The Board and Perrin presented witnesses under oath subject to cross-examination and admitted exhibits. Based on the evidence received, the Board determined that each of the three grounds recited in its termination notification to Perrin were supported by the facts.

The Board's factual findings are clearly supported by evidence in the record. Each of the Board's findings is based on the testimony and evidence received at the hearings. The Board Decision is based on those findings. The court's on-the-record review confirms that the Board Decision has a reasonable basis and must be confirmed.

Perrin argues that the Board overlooked or ignored aspects of Doe's and others' testimony, failed to properly weigh the evidence and made incorrect credibility determinations. The issues Perrin raises regarding Doe's testimony do not call into question the Board's conclusions about their findings. As to the interview and Perrin's later contact with Doe there is sufficient evidence to make the findings the Board made. The testimony about a loudspeaker was considered and explained. Failure of others to observe the contact is not the same as evidence that it did not occur. The length of time the interview lasted was not critical to the Board's findings.

The proper weight to give the testimony is not for this court to second guess. The standard of review for a Rule 74 appeal in an on-the-record appeal does not involve reweighing conflicting testimony or the credibility of witnesses. See *Rodriguez v. Pallito*, 2014 VT 18, ¶ 17. The appealed-from decision must be upheld if any credible evidence supports the conclusion by the appropriate standard. The existence of conflicting testimony is not grounds for overturning the Board Decision.

Perrin also argues that Doe's testimony lacked corroborating evidence. The standard for the court here is not to weigh the strength of the testimony or its corroboration, but to determine whether there is any competent evidence in support of the decision below. Perrin spends much time attacking Doe's credibility, but not the sufficiency of the Board's findings if her testimony is believed. Witness after witness when questioned confirmed the simple truth that if Doe's testimony were true the Board Decision was proper. The question for the court to consider is whether there was sufficient basis in the testimony to support the findings and conclusions. There is.

Perrin's conduct was egregious enough that discharge was reasonable, and Perrin had fair notice that such conduct could result in discharge The Board was empowered to hear the testimony of witnesses, including cross examination, and issue a decision based on the weight of the evidence.  16 V.S.A. § 243(d).  Because that is exactly what the Board did, its decision must be affirmed.

**Third Cause Sufficient**

Beyond Doe's testimony, the Board also found that Perrin's directing Winegarner not to report an incident to DCF sufficient cause to terminate. The evidence supporting that finding is clear and ample. Whether or not a report was made, or would or should have been made anyway, is beside the point: discouraging the reporting was improper. Whether or not only a slight delay occurred is not relevant to the impropriety of interfering with its reporting at all.

Perrin argues that the Board's findings and conclusions concerning his directing employee Rhonda Winegarner to delay making a mandatory report do not demonstrate cause for dismissal, and even asserts, without any basis, that the Board used Winegarner's report as a pretext.

Perrin points to testimony of former Superintendent Ron Stahley to undercut Winegarner's credibility: "Even if somebody told you not to report that, they're mandatory reporters and they're going to make those reports." Hearing Transcript, January 16, 2023, page 127. "The notion that Steve Perrin would tell Rhonda you cannot report that ever, I just don't believe that." (Hearing Transcript, January 16, 2023, page 148.

Perrin's conduct in this incident was egregious enough that discharge was reasonable and he had fair notice that such conduct could result in discharge. The Board found Winegarner and Onorato's testimony credible. There is support for its findings in the record. Interference with the mandatory reporting of abuse is a serious issue, one that the Board properly characterized and acted upon.

### Pre-Termination Procedural due process

Perrin argues that his due process rights were violated because the pre-termination process was inadequate, the post-termination hearing was "structurally biased" and "ignored and withheld exculpatory evidence", and the Board Decision was corrupted by bias and public pressure. Applying the plenary standard of review, the court finds no support in the record for any of these arguments.

Perrin states that the investigator, Attorney Aimee Goddard, was retained not by Superintendent Speno, and that Speno was excluded from the process. He asserts that evidence was withheld from him, and that he had no opportunity to present a meaningful defense.

The Vermont Supreme Court has described the pre-termination process required to satisfy a just-cause municipal employee's due process rights:

An acceptable pre-termination procedure will consist of "oral or written notice of the charges," an "explanation of the employer's evidence," and an opportunity for the employee to present the employee's own side of the story. [*Loudermill*, 470 U.S. at 546–47, 105 S.Ct. 1487].

¶ 14. The Loudermill Court explained that "'something less' than a full evidentiary hearing" was acceptable at the pre-termination stage because a state statute applicable in that case provided a right to "a full administrative hearing and judicial review" post-termination. Id. at 545, 105 S.Ct. 1487 (quoting *Mathews*, 424 U.S. at 343, 96 S.Ct. 893). The Court held that when such post-termination remedies are available to "definitively resolve the propriety of the discharge," the pre-termination process may be merely an "an initial check against mistaken decisions." Id. at 545–46, 105 S.Ct. 1487.

*Hallsmith*, 2015 VT 83, ¶¶ 13-14, 199 Vt. 488. As one U.S. Circuit Court of Appeals has similarly stated:

While some kind of pre-termination proceeding is necessary before a public employee is terminated, this proceeding may be relatively informal and need not be conducted by an unbiased factfinder or the ultimate decision-maker. The proceeding need only advise the employee of the

charges against him, provide a general explanation of the employer's evidence, and give the employee an opportunity to make a case on his own behalf. If the Commonwealth provides adequate post-termination proceedings, with an appropriately neutral decision-maker empowered to rectify any errors, the employee's rights to procedural due process are preserved. *Luciani v. City of Philadelphia*, 643 Fed. Appx. 109, 113 (3d Cir. 2016).

The court finds no genuine dispute of fact regarding the pre-termination notice that Perrin received. On September 30, 2022, the Board sent Perrin a letter which outlined the allegations against him, informed him that the allegations may be grounds for termination, and invited Perrin to respond which it would review in good faith and then notify him of its decision concerning his employment status. SUMF ¶ 8. Perrin did submit a written response to the Board, to which the Board replied by letter dated November 14, 2022. The Board notified Perrin that after careful consideration of his written response and the documents he had provided, it had decided to terminate his employment for three reasons that supported dismissal. SUMF ¶ 11. This process complies with due process requirements.

None of the supposed deficiencies Perrin points to relate to what due process requires, but are mostly criticisms of the investigation done by Goddard. There is no support in caselaw or statute that these criticisms rise to due process violations. There is no statutory requirement that a superintendent investigate, or participate in the investigation of, potential misconduct of a school principal. See 16 V.S.A. §§ 242, 243(d). Rather, the statute expressly provides only that the school board decides whether to dismiss a principal for cause and presides over an evidentiary appeal hearing if the employee requests an appeal. The Board conducts the appeal and ultimately affirms, modifies, or reverses its prior decision. Despite Perrin's protestations to the contrary, and those of the witnesses he cites, there is no statutory support for their argument, and no procedural due process deficiency in the manner in which the Board proceeded pre-termination.

### Post termination due process

Perrin maintains that his post-termination due process rights were violated because he was not provided allegedly exculpatory evidence, he was not provided a video-recorded interview of Doe, he did not receive alleged written communications between Defendants and Doe's attorney, and the same board that initially terminated him also adjudicated his appeal.

Perrin does not support his position by statute or caselaw that he was entitled to be provided exculpatory evidence, if indeed any exists which he has not demonstrated and which defendants do not concede, or the video-recorded interview or any communication between defendants and Doe's attorney. Without such support, the court cannot conclude that this amounts to a due process violation. This is not a criminal matter, and what constitutes due process here is not governed by criminal standards and rules.

Nor does Perrin's claim that the same board that issues a termination letter cannot sit on the appeal constitute a due process violation. The Vermont Supreme Court has held that this same process complies with the statute and does not violate procedural due process rights. 16

V.S.A. § 243(d) vests the Board with the dual powers of initiating termination and thereafter conducting the employee's appeal hearing, if requested. *Burch-Clay v. Taylor*, 2015 VT 110, ¶ 13, 200 Vt. 166. Perrin cites no case that holds differently. Due process does not require more.

### Bias

Perrin's remaining due process challenge claims that the Board Decision was biased and resulted from improper public pressure. Where actual bias exists, relief may be had. However, Perrin does not identify which defendants were biased against him, and did not seek recusal of any below. To preserve the issue of bias for this Rule 74 appeal, Perrin must have sought recusal of any allegedly biased Board members prior to the 16 V.S.A. § 243(d) hearing. "[A] party must present the issue with specificity and clarity in a manner which gives the trial court a fair opportunity to rule on it." *In re Amendment #1 to FY 2023 Accountable Care Organization Budget Order*, 2024 VT 38, ¶ 19. "The same principle applies to appeals from administrative agencies." Id. (citation omitted).

Perrin's failure to request recusal at the time of the hearing below waives his right to appeal on the issue of decision-maker bias. See *Casavant v. Allen*, 2016 VT 89. ("To preserve the issue of judicial bias, a litigant must seek to disqualify the presiding judge in the trial court. ") The court declines to consider this argument because Perrin does not indicate whether or how he preserved this issue below. See V.R.A.P. 28(a)(4)(A) (stating that appellant's brief must indicate how issues were preserved for appeal); *Follo v. Florindo*, 2009 VT 11, ¶ 14, 185 Vt. 390 ("In general, issues not raised at trial are unpreserved, and this Court will not review them on appeal.").

Perrin's speculation and unfounded allegations about the potential for bias or outside influence on the Board does not itself demonstrate an intolerably high risk of unfairness. Nor does it overcome the presumption of honesty and integrity of the Board's conduct in hearing and deciding his appeal.

### Immunity

The individually named Defendants are entitled to qualified immunity for discretionary actions made in good faith that were within the scope of their official duties. *Nelson v. Town of St. Johnsbury Selectboard*, 2015 VT 5. Perrin has the burden of proving that an official violated a clearly established constitutional right. *Sprauge v. Nally*, 2005 VT 85, ¶ 4, n.3, 178 Vt. 222 (citation omitted). Based on the findings above, the court does not reach the question of qualified or absolute immunity or immunity under 24 V.S.A. § 901.

### Intentional Infliction of Emotional Distress

Perrin asserts that defendants placed him on administrative leave and banned him from school property after being advised of an allegation approximately twelve years old, refused to identify the accuser by name or the specific accusation prior to and during his interview by the Board's investigator, let the investigation languish for months while his reputation was

impugned and rumors ran rampant, all while Plaintiff was instructed not to comment about the allegation or defend himself in the court of public opinion, refused to provide him with evidence that may assist him in his defense, demonstrated behavior more mindful of protecting his accuser and her counsel then conducting itself in an unbiased and impartial manner in deference to his statutory and constitutional due process rights, and imposed the harshest penalty possible, termination, when other less punitive options were warranted.

To survive, an IIED complaint must allege "(1) conduct that is extreme and outrageous, (2) conduct that is intentional or reckless, and (3) conduct that causes severe emotional distress." *Baptie v. Bruno*, 2013 VT 117, ¶ 24 (quoting *Thayer v. Herdt*, 155 Vt. 448, 455 (1990)). "An IIED claim can be sustained only where the claimant demonstrates 'outrageous conduct, done intentionally or with reckless disregard of the probability of causing emotional distress, resulting in the suffering of extreme emotional distress, actually or proximately caused by the outrageous conduct.'" Id. (quoting *Colby v. Umbrella, Inc.,* 2008 VT 20, ¶ 10); see also *Boulton v. CLD Consulting Eng'rs, Inc*., 175 Vt. 413, 427(2003). Once challenged by motion for summary judgment, Perrin cannot rely on allegations but must come forward with specific facts to support his claim. Failure to raise a triable issue of fact by demonstrating factual support for a prima facie case is fatal to a claim.

The sort of conduct contemplated by this cause of action is behavior so outrageous in character and so extreme in degree that it goes beyond all possible bounds of decency and tolerable conduct in a civilized community. Such conduct must be regarded as atrocious and utterly intolerable. *Dulude v. Fletcher Allen Health Care, Inc.,* 174 Vt. 74 (2002).

The claimant must suffer emotional distress so severe that no reasonable person could be expected to endure it. This distress must be actually or proximately caused by a defendant's outrageous conduct. *Davis v. American Legion, Dept. of Vermont*, 198 Vt. 204 (2014).

Perrin's complaint for IIED lacks allegations sufficient to withstand defendants' motion for summary judgment.  The actions alleged simply are not of the kind that would cause Perrin "distress so severe that no reasonable person could be expected to endure it." Engaging in legal process to terminate an employee is not the type of behavior that would sustain such a claim as it is neither "extreme" nor is it "outrageous." Perrin has failed to allege any outrageous or oppressive conduct in the manner of his termination. See *Smith v. Local 819 I.B.T. Pension Plan,* 291 F.3d 236, 240 (2d Cir. 2002) (Where plaintiff has asserted only that she was "maliciously and wrongfully terminated." and the conclusory allegation that she suffered IIED, courts not required to accept as true conclusory allegations or legal conclusions masquerading as factual conclusions.) However disquieting or upsetting it may be, pursuing termination as was done here is not both extreme and outrageous as those terms are defined in the IIED context.

Perrin's formulaic claim that he suffered "immeasurable harm to his reputation and emotional well-being and health" is a conclusory allegation or legal conclusion masquerading as a statement of fact that this Court is not required to accept as true. Further, Perrin has failed to demonstrate a genuine issue of material fact that any actions of any defendant state a cause of action for intentional infliction of emotional distress. The IIED claim must be dismissed.

**Defamation**

As with his IIED claim, Perrin has not provided a sufficient response to support his defamation claim. His complaint states that the defendants made a public announcement that Perrin had been dismissed for cause.

The general elements of a private action for defamation (libel and/or slander) are a false and defamatory statement concerning another; some negligence, or greater fault, in publishing the statement; publication to at least one third person; lack of privilege in the publication; special damages, unless actionable per se; and some actual harm so as to warrant compensatory damages.. *Lent v. Huntoon,* 143 Vt. 539, 546–47, 470 A.2d 1162, 1168 (1983) (footnote omitted).

Truth is a complete defense. It is true that Perrin was dismissed for cause.

Moreover, nothing in Perrin's opposition points out any specific published statement by any defendant, which is a requirement of his claim. There is no reference to a single published statement, no details about when such a statement was made, or who made it, or to whom it was made. Perrin has failed to demonstrate a genuine issue of material fact that would support denying the motion. Instead, defendants have demonstrated that they are entitled to judgment as a matter of law. The defamation claim must be dismissed.

**Order**

Rule 74 appeal is DENIED.

Defendants' Motion for Summary Judgment as to Counts 2 Breach of Contract, 4 Due Process, 5 IIED and 6 Defamation is GRANTED.

A separate judgment shall issue.

**Signed electronically November 26, 2025 pursuant to V.R.E.F 9(d).**

**David Barra**
**Superior Court Judge**